**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **GREGORY S. MILLIGAN, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR GLOBAL CREDIT RECOVERY, LLC, ET AL.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 23-cv-02691** |
| **v.** | ) | |
| **JOHN JEFFREY MAY, ET AL.,** | ) | |
| **Defendants.** | ) | |

**RECEIVER GREGORY S. MILLIGAN'S ORIGINAL COMPLAINT AGAINST CERTAIN NET WINNERS**

Receiver Gregory S. Milligan (the "Receiver") hereby files this Complaint Against Certain Net Winners (the "Complaint") and would respectfully show the Court as follows:

## I. SUMMARY

1. From 2013 to 2018, Kevin Merrill ("Merrill") and Jay Ledford ("Ledford") orchestrated one of the largest Ponzi schemes on record that raised more than $345 million from more than 230 individual investors or investor groups. The Ponzi scheme ultimately collapsed when Ledford and Merrill were arrested, indicted, and pled guilty to multiple charges related to their scheme to defraud investors. The majority of the investors—160 of the 230—lost 50% or more of their principal investment, with 73 investors losing 100% of their investment. These losses were the result, in part, of other earlier investors receiving fictious "profits" on their investment with Ledford and Merrill. These fictious "profits" form the basis of this Complaint.

2. The Receiver's ultimate goal is to maximize the recovery of assets to provide the greatest benefit and recovery to the defrauded investors and other eligible claimants. Maximizing

the return requires the Receiver to recover and take control of all assets of the Receivership Estate,[1] including assets that have been inappropriately transferred to third parties.

3. The Receiver's investigation to date reveals that substantially all of the revenue generated by Merrill, Ledford, and other Receivership Parties (defined below) did not come from the purchase and sale of debt portfolios as had been pitched to their investors. Rather, substantially all of the revenue generated by the Receivership Parties was comprised of money raised from new investors that was then used to pay previous investors. A textbook Ponzi scheme.

4. Certain previous investors not only received from the Receivership Parties a return of their principal investment, but they also received payments in excess of their respective principal investments in dividends, interest, or other purported "profits" on their investment(s) (the "Net Winnings"). These investors (Defendants in this Action) are identified in the attached Appendix and are collectively referred to as the "Net Winners." The distributions the Net Winners received from the Receivership Parties in excess of their principal investment were not, in fact, their actual principal or profits earned on the funds they invested. Instead, the money used to make those payments came directly from the principal investments of other subsequent investors.

5. At this stage of the Receivership, the Receiver has identified a substantial amount of Net Winnings paid to the Net Winners and, through this Complaint, seeks the return of those funds to the Receivership Estate in order to make an equitable distribution to all eligible claimants. At a minimum, the Net Winners named in the Appendix received over $26.7 million in distributions, of which $12.6 million were Net Winnings.

6. The Receiver seeks an order (a) establishing that the Net Winnings received directly

[1] Capitalized terms herein shall have the meaning as used in the Receivership Order (defined below) in the SEC Action (defined below) unless otherwise noted.

or indirectly by the Net Winners from fictitious "profits" on their investments were fraudulent transfers or, in the alternative, that each of the Net Winners were unjustly enriched by the Net Winnings received directly or indirectly by the Net Winners from fictitious "profits" on their investments and that are held in constructive trust for the Receivership Estate; (b) ordering that Net Winnings received directly or indirectly by the Net Winners are property of the Receivership Estate ; (c) finding the amount of Net Winnings each of the Net Winners received in the amounts set forth in the Appendix to this Complaint; (d) ordering that each of the Net Winners is liable to the Receivership Estate for an amount equaling the amount of the Net Winnings that he, she, or it received; and (e) ordering each of the Net Winners to turn over the full amount of the Net Winnings to the Receiver.

## II. PARTIES

7. Plaintiff Gregory S. Milligan, in his capacity as Court-appointed Receiver for Global Credit Recovery, LLC, at al., was appointed as the Receiver in the civil action styled *Securities and Exchange Commission v. Kevin B. Merrill*, et al., Case No. 18-cv-02844-RDB, in the United States District Court for the District of Maryland (the "SEC Action").

8. The Defendants (*i.e.*, the Net Winners) in the attached Appendix may be served with process pursuant to the Federal Rules of Civil Procedure at the addresses identified in the attached Appendix, through their attorneys of record identified in the attached Appendix, if applicable, or by other means approved by order of this Court.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action and venue is proper under Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Chapter 49 of Title 28, Judiciary and Judicial Procedures, 28 U.S.C. §§ 754 and 1331.

10. This Court also has ancillary jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) because this action is brought by the Receiver to exercise his duties and accomplish the goals set forth in the Order appointing him in the SEC Action. *See also Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022) ("Because the SEC action in which the Receiver was appointed contained a federal question, the district court had ancillary jurisdiction over the state law claims as well.").

11. Further, as the Court that appointed the Receiver and entered the Receivership Order, this Court has exclusive jurisdiction over all assets of the Receivership Parties, including the claims brought by the Receiver in this Complaint. *See* Receivership Order at ¶ 1.

12. Further, within 10 days of entry of the Receivership Order, the Receiver filed the original complaint in the SEC Action and the Receivership Order in six United States District Courts pursuant to 28 U.S.C. § 754, giving this Court *in rem* and *in personam* jurisdiction in each district where the complaint and Receivership Order have been filed. *See* 28 U.S.C. § 754 ("A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.").

13. Venue is proper in this Court because (i) one or more of the Defendants reside in Maryland and (ii) a substantial part of the events or omissions giving rise to the claims occurred in Maryland. *See* 28 U.S.C. § 1391(b).

## IV. FACTUAL BACKGROUND

### A. The SEC Action.

14. The SEC initiated an action (the "<u>SEC Action</u>") on September 13, 2018 when it filed suit against Defendants Merrill, Ledford, Cameron R. Jezierski ("<u>Jezierski</u>"), Global Credit

Recovery, LLC, Delmarva Capital, LLC, Rhino Capital Holdings, LLC, Rhino Capital Group, LLC, DeVille Asset Management LTD, and Riverwalk Financial Corporation (collectively, the "SEC Defendants") asserting claims against the SEC Defendants for violating the Securities Act of 1933 and the Securities Exchange Act of 1934 based on their operation of a Ponzi scheme that raised more than $345 million from more than 230 individual investors or investor groups to purportedly purchase consumer debt portfolios. *See* Dkt. No. 1. Merrill, Ledford, and Jezierski each consented to entry of partial judgments against them in the SEC Action. *See* SEC Action, Dkt. No. 181 (Judgment as to Jezierksi), Dkt. No. 196 (Judgment as to Ledford), and Dkt. No. 211 (Judgment as to Merrill).

15. On September 13, 2018, the Court appointed the Receiver to marshal and preserve the assets of the SEC Defendants and their affiliate entities, which collectively are referred to as the Receivership Parties.[2] *See* SEC Action, Dkt. No. 11 at 1. On November 27, 2018, the Court entered a First Amended Order Appointing Temporary Receiver that further confirmed the Receiver's rights, duties, and obligations. *See* SEC Action, Dkt. No. 62. On September 14, 2021, the Court entered a Second Amended Order Appointing Temporary Receiver that further confirmed the Receiver's rights, duties, and obligations. *See* SEC Action, Dkt. No. 484. On

[2] The Receivership Parties are: Merrill, Ledford; Jezierski; Global Credit Recovery, LLC; Delmarva Capital, LLC; Rhino Capital Holdings, LLC; Rhino Capital Group, LLC; DeVille Asset Management LTD; Riverwalk Financial Corporation; K.B. Merrill Associates; Financial Reclamation Group LLC; Halo Credit Solutions LLC; JBL Holdings LLC; Jay B. Ledford, P.C.; the Joseph Finance Company; Leddy Bear LTD; Ledford & Associates, PLLC; King Fischer LTD d/b/a LP Investments LTD; NLEX, Inc.; Receivables Portfolio Interchange, Inc.; Riverwalk Capital Investments, Inc.; Riverwalk Credit Solutions, Inc.; Riverwalk Debt Solutions, Inc.; Riverwalk Fixed Asset Group LLC; SCUSA Financial, Inc.; Vaquero Asset Management, Inc.; CRJ Holdings LLC; Centurion Capital Corporation; GCR CBL CP I, LLC; GCR CBL CP II, LLC; GCR CBL CP III, LLC; GCR CBL CP IV, LLC; GCR HCP Holdings 1, LLC; GCR Mercer Holdings, LLC; the J Trust; and the Kevin B. Merrill Revocable Trust. *See* Receivership Order, Dkt. No. 484 at 2-3.

October 4, 2023, the Court entered a Third Amended Order Appointing Temporary Receiver (the "Receivership Order") that further confirmed the Receiver's rights, duties, and obligations, and further authorized the Receiver to file this Complaint. *See* SEC Action, Dkt. No. 769.

16. Since the Receiver was appointed, he has undertaken significant efforts to identify the assets of the Receivership Parties, including monies, funds, securities, investments, cash, accounts, vehicles, equipment, real estate, art, collectibles, jewelry, casino accounts, and any other assets of value. In his initial preservation plan, the Receiver detailed the various assets of the Receivership Parties that he had identified within the first sixty days of his appointment, which included eleven real estate assets, thirty-four vehicles, fine art, watches, luxury personal property, and jewelry, along with their recommended disposition. *See* SEC Action, Dkt. No. 54.

17. Throughout the course of the SEC Action and pursuant to approval from this Court, the Receiver has diligently worked to market and sell the assets of the Receivership Parties with the goal of maximizing the cash available for distribution to those who have claims against the Receivership Parties.

18. The Receiver also operated DeVille Asset Management, Ltd ("DeVille"), Riverwalk Credit Solutions, Inc., and Riverwalk Debt Solutions, Inc. until the entities' assets were sold. The Receiver's operation of these entities generated cash for the Receivership Estate until such time as the entities' assets were sold. The Receiver conducted a claims procedure and made an interim distribution of $50 million to the victims of Ledford and Merrill's Ponzi scheme. In ruling on the proposed distribution plan, the Court in the SEC Action found that Ledford and Merrill's fraud was a Ponzi scheme and approved the rising tide methodology for distributions to victims. *See* SEC Action, Dkt. No. 690.

19. The Receiver has liquidated most of the physical assets of the Receivership Parties.

However, the Receiver still intends to liquidate and/or recover certain additional assets, including the claims brought in this Complaint.

**B. The Fraud.**

20. Merrill, Ledford, and Jezierski each pled guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 in the related criminal action styled *United States of America v. Kevin B. Merrill, et al.*, Case No. 18-cr-00465-RDB, filed in the United States District Court for the District of Maryland (the "Criminal Action"). *See* Plea Agreements in Criminal Action, Case No. 1:18-cr-00465-RDB, Dkt. Nos. 76, 81, and 87. In addition, Ledford pled guilty to committing aggravated identity theft and a money-laundering transaction in excess of $10,000.00. *See id.*, Dkt. No. 87 at 1. Merrill pled guilty to committing wire fraud. *See id.*, Dkt. No. 81 at 1.

21. In connection with their pleas, Ledford and Merrill agreed, among other things, that "there was a scheme and artifice to defraud and to obtain money and property from investors by materially false and fraudulent pretenses, representations, and promises using interstate wire communications as alleged in the Indictment." *Id.*, Dkt. No. 87 at 1; *see also id.*, Dkt. No. 81 at 1.

22. Ledford and Merrill further agreed that from 2013-2018, their scheme to "defraud took in over $394 million" from investors. *Id.*, Dkt. No. 81-1 at 15; Dkt. No. 87-1 at 12. Ledford and Merrill "used investor funds to pay out promised returns to other investors and to misrepresent those payouts as funds from the sales of portfolios." *Id.*, Dkt. No. 87-1 at 9; Dkt. No. 81-1 at 7. They also "diverted investors' funds and collections for their own personal benefit." *Id.*, Dkt. No. 87-1 at 11; Dkt. No. 81-1 at 14. They returned $248 million to the investors they defrauded during the course of the Ponzi scheme. *Id.*, Dkt. No. 81-1 at 15.

**C. The Net Winnings.**

23. Of the $248 million that the Receivership Parties returned to investors,

approximately $27 million were fictitious "profits" that were paid out to approximately 100 early investors, in an effort to provide legitimacy to the Ponzi scheme and entice new investors to invest with Ledford and Merrill.[3]

24. The Net Winners named in the Appendix received money from the Receivership Parties, ranging in amounts from approximately $20,000 to $1.85 million, that exceeded their principal investment and for which they did not provide reasonably equivalent value. *See* Appendix. All combined, these Net Winners received approximately $12.6 million more in distributions than they invested with the Receivership Parties. *See id*. The transfers were made with the actual intent to hinder, delay, or defraud creditors. The Net Winnings were simply money that came from the more than 300 other investors who were deceived into investing with the Receivership Parties and who had not withdrawn their funds from the Receivership Parties as of the date the SEC Action was filed. The Net Winnings must be returned to the Receivership Estate to compensate the victims of the fraud according to principles of law and equity.

## V. CAUSES OF ACTION

25. This Court appointed the Receiver over all assets that are "(a) owned, controlled, or held, in whole or in part, by or for the benefit of any of the Receivership Parties; (b) in the actual or constructive possession of any of the Receivership Parties, or other individual or entity acting in concert with any of the Receivership Parties; (c) held by an agent of any of the Receivership Parties, including as a retainer for the agent's provision of services; or (d) owned, controlled, or held, in whole or in part, by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned,

[3] The Receiver has recovered or entered into agreements to repay approximately $9.7 million from 47 net winners who voluntarily returned all or a vast majority of their Net Winnings prior to the filing of this Complaint.

controlled, or held, in whole or in part, by any of the Receivership Parties, including assets that have been transferred to other persons or entities but as to which assets such persons or entities do not have a legitimate claim" (the "Receivership Assets"). Receivership Order at ¶¶ 1-3.

26. The Court further ordered the Receiver to "take custody, control, and possession of all Receivership Assets and records relevant thereto from the Receivership Parties" and to "commence and prosecute such actions or proceedings in this Court to impose a constructive trust, obtain possession, recover judgment, and/or such other remedy that the Court determines just and equitable, with respect to persons or entities who received assets traceable to the Receivership Estate, including but not limited to disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, or collection of debts." Receivership Order at ¶¶ 8(B), 38.

**A. Turnover of Fraudulent Transfers.**

27. The Receiver is entitled to the return of all Net Winnings paid to the Net Winners by one or more of the Receivership Parties because such payments constitute fraudulent transfers under applicable law. The Receivership Parties were insolvent at the time of the transfers, which were made without fair consideration or in exchange for reasonably equivalent value. Further, the Receivership Parties transferred the Net Winnings to the Net Winners with actual intent to hinder, delay, or defraud their creditors. Moreover, to the extent the payouts and/or distributions to the Net Winners exceeded the Net Winner's principal investment, the Net Winner did not give the Receivership Parties reasonably equivalent value for that excess amount within the meaning of applicable laws governing fraudulent transfers. As a result, the Receiver is entitled to the return of those Net Winnings from the Net Winners.

28. The Receiver may avoid (i) transfers made by insolvent Receivership Parties if the transfer is made without fair consideration or in exchange for reasonably equivalent value or (ii)

transfers made with the actual intent to hinder, delay, or defraud creditors. Because Ledford and Merrill operated the Receivership Parties as a Ponzi scheme, all transfers of assets of the Receivership Parties to, for the benefit of, or at the request of the Net Winners were made with the actual intent to hinder, delay, or defraud the creditors of the Receivership Parties and were fraudulent transfers within the meaning of applicable laws governing fraudulent transfers. The Receiver is, therefore, entitled to the return of the fraudulently transferred Net Winnings that the Net Winners received.

29. In order to carry out the duties delegated to him by this Court, the Receiver seeks to have the conveyances of the Net Winnings set aside and turned over to the Receiver to obtain complete and exclusive control, possession, and custody of all Net Winnings received by the Net Winners.

30. The Receiver therefore seeks an order (a) establishing that the Net Winnings received directly or indirectly by the Net Winners were fraudulent transfers; (b) ordering that Net Winnings received directly or indirectly by the Net Winners are property of the Receivership Estate; (c) ordering that each of the Net Winners is liable to the Receivership Estate for an amount equaling the amount of the Net Winnings that he, she, or it received, as detailed in the attached Appendix; and (d) ordering each of the Net Winners to turn over the full amount of the Net Winnings to the Receiver.

**B. In the Alternative, Disgorgement of Net Winnings Under the Doctrine of Unjust Enrichment.**

31. In the alternative, the Receiver is entitled to disgorgement of the Net Winnings paid to the Net Winners pursuant to the doctrine of unjust enrichment under applicable law. The Net Winners obtained a benefit in the form of the Net Winnings that were conferred upon them by one or more of the Receivership Parties, and such Net Winnings in equity and good conscience belong

to the Receivership Estate for ultimate distribution to the defrauded investors.

32. The Net Winners listed in the Appendix not only received a full return on their principal investments, but they also received Net Winnings in excess of those principal investments; on average more than a 49% "profit" on their investment. The significant returns these Net Winners enjoyed by investing in the Ponzi scheme have come at the expense of the hundreds of other investors whose own principal investments subsidized both the Net Winners' return of principal and the Net Winnings received in excess of those investments.

33. In order to carry out the duties delegated to him by this Court, the Receiver seeks to obtain complete and exclusive control, possession, and custody of all Net Winnings received by the Net Winners through the return of the Net Winnings to the Estate.

34. The Net Winners have been unjustly enriched by their receipt of the Net Winnings. Pursuant to the equity powers of this Court, the Receiver therefore seeks an order (a) establishing that each of the Net Winners were unjustly enriched by the Net Winnings received directly or indirectly by the Net Winners from fictitious "profits" on their investments; (b) ordering that Net Winnings received directly or indirectly by the Net Winners are property of the Receivership Estate held pursuant to a constructive trust for the benefit of the Receivership Estate; (c) ordering that each of the Net Winners is liable to the Receivership Estate for an amount equaling the amount of the Net Winnings that he, she, or it received, as detailed in the attached Appendix; and (d) ordering each of the Net Winners to turn over the full amount of the Net Winnings to the Receiver.

## VI. RELIEF REQUESTED

WHEREFORE, Receiver Gregory S. Milligan respectfully requests entry of a final judgment against all Net Winners on all claims and finding:

i. The Net Winnings received directly or indirectly by the Net Winners from fictitious

"profits" on their investments were fraudulent transfers or, in the alternative, each of the Net Winners were unjustly enriched by the Net Winnings received directly or indirectly by the Net Winners from fictitious "profits" on their investments and are held in constructive trust for the benefit of the Receivership Estate;

ii. The Net Winnings received directly or indirectly by the Net Winners are property of the Receivership Estate;

iii. The amount of Net Winnings each of the Net Winners received in the amounts set forth in the Appendix to this Complaint;

iv. Each of the Net Winners is liable to the Receivership Estate for an amount equaling the amount of the Net Winnings that he, she, or it received; and

v. Each of the Net Winners is Ordered to turn over or disgorge the full amount of the Net Winnings to the Receiver.

Respectfully Submitted,

/s/ Jameson J. Watts

Lynn H. Butler, *pro hac vice*
Jameson J. Watts, *pro hac vice*
HUSCH BLACKWELL LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com
jameson.watts@huschblackwell.com

Buffey E. Klein, *pro hac vice*
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Tel: (214) 999-6100
Fax: (214) 999-6170
buffey.klein@huschblackwell.com

Brian P. Waagner, Fed. Bar No. 14954
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Tel: (202) 378-2300
Fax: (202) 378-2318
brian.waagner@huschblackwell.com

*Counsel for Receiver Gregory S. Milligan*