## IN THE UNITED STATES DISTRICT COURT
## FOR·THE DISTRICT OF MARYLAND

GREGORY S. MILLIGAN,  IN HIS
CAPACITY AS COURT-APPOINTED
RECEIVER FOR GLOBAL CREDIT
RECOVERY, LLC, ET AL.,

      Plaintiff,

v.

JOHN JEFFREY MAY ET AL.,

      Defendants.

\*

\*

\*

\*

\*

\*

\*

Civil No. 23-2691-BAH

\*     \*     \*     .\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Receiver Gregory S. Milligan ("Receiver" or "Plaintiff") brought suit against

fifty-seven individuals and entities (collectively "Defendants") seeking recovery of "net winnings"

or "fictitious profits" Defendants allegedly received as a result of their alleged investment in a

multimillion-dollar Ponzi scheme.[1]  ECF 1.  Pending before the Court are eight motions to

dismiss.[2]  ECF 41 (motion to dismiss filed by Defendants Logic Growth, LLC, and John Jeffrey

May ("May Defendants")); ECF 74 (motion to dismiss filed by Defendant Jahed A. Hamrah); ECF

83 (motion to dismiss filed by Defendant Belquis Sadozai); ECF 86 (motion to dismiss filed by

Defendant Zarghoona Sadozai); ECF 95 (motion to dismiss filed by Defendants Double H

International Holdings, Inc., and Richard Hall ("Double H Defendants")); ECF 99 (motion to

---

[1] Such suits are often referred to as "clawback" actions. *See Wiand v. Cloud*, 919 F. Supp. 2d 1319, 1322 n.1 (M.D. Fla. 2013).

[2] Also ripe are Plaintiff's motions for alternative service. ECFs 128, 129, 130, and 132. This memorandum opinion does not address those motions.

dismiss filed by Defendant Barry G. Morse); ECF 103 (motion to dismiss filed by Defendants

Lana Wahl, Vicky Wahl, and George Wahl III ("Wahl Defendants")); ECF 137 (motion to dismiss

filed by Defendants Aubrey Carter and Courtney Nowell ("Nowell Defendants")). These motions

are ripe for disposition. *See* ECFs 43, 80, 91, 92, 104, 105, 106, and 138 (Plaintiff's respective

oppositions); ECFs 45, 90, 97, 98, 111, 107, 108, and 139 (Defendants' respective replies). All

filings include memoranda of law and exhibits.[3] The Court has reviewed all relevant filings and

finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons

stated below, the motions to dismiss are each **DENIED**.

## I.    **BACKGROUND**

The instant dispute stems from a Ponzi scheme for which Kevin Merrill, Jay Ledford, and

Cameron Jezierski ultimately pled guilty in this Court. *See* ECF 1, at 1 ¶ 1, at 7 ¶ 20; Crim. No.

18-465-RDB (filed Sept. 11, 2018) (hereinafter "Criminal Action"); *see also CCWB Asset Invs.,*

*LLC v. Milligan,* 112 F.4th 171, 175 (4th Cir. 2024). The perpetrators of the scheme "raised over

$345 million from more than 230 investors, . . . lur[ing] investors by touting significant returns

from the purchase and resale of consumer debt portfolios." *CCWB Asset Invs., LLC*, 112 F.4th at

175. "But instead of investing the cash as promised, they stole a portion of it and used the

remainder to pay purported dividends, or 'distributions,' to earlier investors."[4]  *Id.*  A District of

---

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[4] News of the scheme and the subsequent criminal developments made national and international headlines. *See, e.g.*, Adiel Kaplan, *Three men charged with alleged $364 million Ponzi scheme in Maryland*, NBC News (Sept. 19, 2018, 3:09 PM), https://www.nbcnews.com/news/crime-courts/three-men-charged-alleged-364-million-ponzi-scheme-maryland-n911091; Aaron Gregg, *"Thanks, my shady friend!" Maryland man pleads guilty in alleged $550 million Ponzi scheme*, Washington      Post      (May      16,      2019,      5:36      PM), https://www.washingtonpost.com/business/2019/05/16/thanks-my-shady-friend-maryland-man-pleads-guilty-alleged-million-ponzi-scheme/; Snejana Farberov, *Ponzi scheme fraudster dubbed 'the next Bernie Madoff' by judge is jailed for 22 years over $396 MILLION scam the day after*

2

Maryland grand jury returned a criminal indictment against Merrill, Jezierski, and Ledford on September 11, 2018. *See* Criminal Action, ECF 1. Merrill, Jezierski, and Ledford each appeared before the Court for their initial appearances on September 18, 2018, September 24, 2018, and October 2, 2018, respectively. *See* Criminal Action, ECFs 13, 18, and 31.

Subsequent to the filing of criminal case (but before any criminal defendant made their initial appearance in court), on September 13, 2018, the Securities and Exchange Commission ("SEC") brought an enforcement action against Merrill, Ledford, Jezierski, and the entities through which they had perpetrated the Ponzi scheme. *See* Civ. No. 18-2844-RDB (herein after the "Enforcement Action"), ECF 1.[5] The same day the Enforcement Action was filed, the Court entered an order appointing Gregory S. Milligan as receiver and expressly forbidding that "[t]he Receiver shall not have the power to bring suits in law or in equity without further Order of this Court."[6] *See* Enforcement Action, ECF 11 (hereinafter "Receivership Order"), at 4 ¶ 6. Though the Receivership Order was initially entered under seal at the SEC's request, the case was later unsealed on September 18, 2018—the same date of Merrill's initial appearance in the Criminal Action. *See* Enforcement Action, ECFs 18 and 19. The Receivership Order was then amended three times, on November 27, 2018, *see* Enforcement Action, ECF 62 (hereinafter "First Amended Receivership Order"), on September 14, 2021, *see* Enforcement Action, ECF 484 (hereinafter

---

*his wife pleaded guilty to trying to hide his cash*, Daily Mail (Oct. 11, 2019, 11:34 AM), https://www.dailymail.co.uk/news/article-7563511/Ponzi-scheme-fraudster-jailed-22-years-396MILLION-scam.html.

[5] The Fourth Circuit notes that the SEC brought the suit "[o] November 6, 2018." *CCWB Asset Invs., LLC*, 112 F.4th at 175. This is the date the SEC filed the amended complaint. *See* Enforcement Action, ECF 50.

[6] This order, including the litigation stay language, was proposed by the SEC, not Plaintiff here. *See* Enforcement Action, ECF 3 (SEC's motion for temporary restraining order and to appoint receiver) and ECF 3-6 (proposed order).

"Second Amended Receivership Order"), and on October 4, 2023, *see* Enforcement Action, ECF 769 (hereinafter "Third Amended Receivership Order") (collectively, "Receivership Orders"). The First and Second Amended Receivership Orders contained the same prohibition as to the Receiver, with limited exceptions permitted by ¶ 37 of each of those orders.  Enforcement Action, ECF 62, at 5 ¶ 6, at 19–20 ¶ 37; ECF 484, at 5 ¶ 6, at 20–21 ¶ 37.  These orders also contained the following:

> 36. All Ancillary Proceedings not subject to Paragraph 37 below are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Parties against a third person or party, or as to any and all claims or causes of action under applicable law that have accrued or are accruing regarding transfers and transactions of fraudulently obtained investor funds (or proceeds thereof) to third parties, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

Enforcement Action, ECF 62, at 19 ¶ 36; ECF 484, at 20 ¶ 36.[7]  The Third Amended Receivership Order, however, lifted the stay with the following amendment:

> 38. The Court further modifies the above-described stay in part and amends the Second Amended Order Appointing Temporary Receiver to allow the Receiver, in consultation with Counsel for the SEC, to commence and prosecute such actions or proceedings in this Court to impose a constructive trust, obtain possession, recover judgment, and/or such other remedy that the Court determines just and equitable, with respect to persons or entities who received assets traceable to the Receivership Estate, including but not limited to disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, or collection of debts.

---

[7] The original Receivership Order also stayed related litigation but did not include language about allegedly fraudulent transfers to third parties. *See* Enforcement Action, ECF 11, at 19 ¶ 36.  The First Amended Receivership Order expressly expands the litigation stay to "to any and all claims or causes of action under applicable law that have accrued or are accruing regarding transfers and transactions of fraudulently obtained investor funds (or proceeds thereof) to third parties." Enforcement Action, ECF 62, at 19 ¶ 36.

Enforcement Action, ECF 769, at 21–22 ¶ 38. The same day the Third Amended Receivership Order was entered (October 4, 2023), Receiver Milligan brought this clawback action against Defendants, purported net winners in the Ponzi scheme, to recover the net winnings. *See* ECF 1, at 2 ¶ 4. Since the complaint was filed, some defendants have been voluntary dismissed, some have answered, and some have moved to dismiss.[8] *See* ECFs 46, 64, 65, 110, 116–119, 122, 124, and 125 (notices of voluntary dismissal); ECFs 33, 61, and 88 (answers); ECFs 41, 74, 83, 86, 95, 99, 103, and 137 (motions to dismiss for failure to state a claim). The Court now addresses the motions to dismiss, which are ripe for disposition.[9]

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. As

---

[8] Other defendants appear to have failed to respond to the complaint, *see* ECFs 13, 17, 18, 19, 25, 30, 44, 63, 113, 114, 115, 127, and 131 (notices that summonses were returned executed on defendants who later did not respond to complaint), and some have not yet been served with process, *see* ECFs 128, 1129, 130, and 132 (motions for alternative service).

[9] This action was originally assigned the Judge Bennett, who also presided over the Enforcement Action and Criminal Action. It was reassigned to the undersigned on December 20, 2023.

evaluating a complaint under Rule 12(b)(6) is "a context-specific task" the Court may "draw on

its judicial experience and common sense." *Id.* at 679.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747

(4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time,

a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's]

claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits."

*Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014). In evaluating a motion

to dismiss, "a court may take judicial notice of 'matters of public record' and other information

that would constitute adjudicative facts under Federal Rule of Evidence 201." *Megaro v.

McCollum*, 66 F.4th 151, 158 (4th Cir. 2023) (citing *Goldfarb v. Mayor & City Council of

Baltimore*, 791 F.3d 500, 508–12 (4th Cir. 2015)).

## III.   **ANALYSIS**

Each of the motions to dismiss contain essentially the same arguments, which boil down

to the following bases for dismissal: (1) the suit is barred by the statute of limitations and the Court

could not toll the statute of limitations through the Receivership Orders, ECF 41-1, at 5–9; ECF

74-1, at 3–9; ECF 83-1, at 3–9; ECF 86-1, at 3–9; ECF 95-1, at 7–12; ECF 99-1, at 6–8; ECF 103-

1, at 7–13; ECF 137-1, at 3–7; (2) the complaint fails to state a claim for fraudulent conveyance

under Rule 12(b)(6), ECF 41-1, at 9–10; ECF 74-1, at 9–12; ECF 83-1, at 9–12; ECF 86-1, at 9–

12; ECF 95-1, at 4–6; ECF 99-1, at 8–12; ECF 103-1, at 3–7; ECF 137-1, at 7–9; and (3) the

complaint fails to state a claim for unjust enrichment, ECF 41-1, at 10–11; ECF 74-1, at 12–14;

ECF 83-1, at 12–14; ECF 86-1, at 12–14; ECF 95-1, at 6–7; ECF 99-1, at 12–13; ECF 103-1, at 7;

ECF 137-1, at 9–10. Some Defendants also argue that the fraudulent conveyance claim fails under

the heightened pleading standard imposed by Rule 9(b).[10]  *See* ECF 74-1, at 9–12; ECF 83-1, at

9–12; ECF 95-1, at 4–6; ECF 103-1, at 5–6; ECF 137-1, at 7–9.  The Court addresses each

argument in turn.[11]

## A.   The Court Declines to Find that This Suit is Barred by the Statute of Limitations

"The Supreme Court has held that a district court has ancillary subject matter jurisdiction

over an action brought by a receiver in furtherance of its appointment where the district court had

federal question jurisdiction over the original action in which it appointed the receiver."  *Robb*

*Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (citing *Riehle v. Margolies*,

279 U.S. 218, 223 (1929); *Pope v. Louisville, N.A. & C. Ry. Co.*, 173 U.S. 573, 577 (1899); *White*

*v. Ewing*, 159 U.S. 36, 38–39 (1895); *Alexander v. Hillman*, 75 F.2d 451, 453 (4th Cir. 1935))

(finding that the district court had ancillary jurisdiction over a court-appointed receiver's action to

locate and collect receivership assets); *see also Peacock v. Thomas*, 516 U.S. 349, 356 (1996)

("[W]e have approved the exercise of ancillary jurisdiction over a broad range of supplementary

proceedings involving third parties to assist in the protection and enforcement of federal

judgments—including attachment, mandamus, garnishment, and the pre-judgment avoidance of

fraudulent conveyances."); *Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008) (finding receiver's

suit asserting state law fraudulent conveyance claims to recover funds from net winners in a Ponzi

---

[10] Defendant Barry Morse also directs the Court to a 2019 state court case filed in the Circuit Court for Montgomery County, *Connaughton et. al. v. Day et. al.*, Case No. 461362-V (Cir. Ct. Mont. Cnty.).  *See* ECF 99-1, at 2–3.  The Court is presently unable to review any of the documents associated with that case.  The Court limits its present analysis to the sufficiency of the instant complaint, which refers to the Criminal and Enforcement actions brought in this Court.

[11] Throughout the analysis, the Court often refers only to the first filed motion to dismiss (ECF 41) and the correspondent opposition (ECF 43) and reply (ECF 45) for convenience.  Nevertheless, the Court has reviewed all the pending motions to dismiss, and the analysis applies to each of them. Where relevant, the Court cites other motions for arguments made only in those motions to dismiss.

scheme was subject to the federal courts' ancillary jurisdiction). The Court, therefore, exercises its jurisdiction over this action pursuant to ancillary jurisdiction stemming from the related SEC Enforcement Action.

The parties agree that Maryland law, including statute of limitations rules, apply here. *See* ECF 41-1, at 5 n.2; ECF 43, at 5; ECF 74-1, at 4; ECF 83-1, at 4; ECF 86-1, at 4; ECF 95-1, at 7; ECF 99-1, at 6; ECF 103-1, at 8; ECF 137-1, at 3 n.1. In Maryland, the statute of limitations for bringing a civil action, including an action for fraudulent conveyance or unjust enrichment, is three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. When a Court applies a state statute of limitations, it also applies state tolling principles. *See Donell*, 533 F.3d at 772–74 (applying state statute of limitation rules to in a fraudulent conveyance case filed by a receiver to recover net winnings from Ponzi scheme investors); *Resol. Tr. Corp. v. Everhart*, 37 F.3d 151, 155 (4th Cir. 1994) ("The [Supreme] Court held that federal courts borrowing state statutes of limitation must also borrow state tolling provisions.").

A statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1) (listing "statute of limitations" as an "avoidance or affirmative defense" that must be "affirmatively state[d]" in a responsive pleading). As such, "the defendant generally bears the burden of affirmatively pleading its existence." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006). Typically, the Court should only grant a motion to dismiss based on the statute of limitation having run if "it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714, 722 (D. Md. 2014) (quoting *Litz v. Md. Dep't of Env't*, 76 A.3d 1076, 1086 (Md. 2013)).

Defendants argue that the Receiver's complaint is untimely under Maryland's statute of limitations. Relying primarily on *Murphy v. Liberty Mutual Ins. Co.*, 274 A.3d 412 (Md. 2022), a

case where the Supreme Court of Maryland upheld the Chief Judge's administrative order tolling statutes of limitation during the COVID-19 pandemic, Defendants advance that the Receivership Orders in the Enforcement Action could not suspend the statute of limitations under Maryland law, and especially as to third parties—like Defendants here—without violating Defendants' due process rights. *Id.* at 7–9. Thus, as Defendants see it, because the complaint was filed over five years after the Receiver's appointment, it is untimely regardless of the tolling provisions in the Receivership Orders.

Plaintiff counters that the Receivership Orders properly tolled the statute of limitations and argues that judicial tolling of the statute of limitations is proper under Maryland law. ECF 43, at 5–7. Plaintiff further asserts that even if the Receivership Orders did not toll the statute of limitations, the issue is not properly decided on a motion to dismiss because factual determinations remain as to whether the Receiver was on inquiry notice at the time of his appointment and/or whether the fraud exception or discovery rule apply to toll the statute of limitations. *Id.* at 7–8. Plaintiff also posits that Defendants here were on notice of this action because Plaintiff, as receiver in the Enforcement Action, sent claims forms to all participants in the scheme, including Defendants. *Id.* at 8. Thus, according to Plaintiff, "there are no due process concerns with respect to the tolling provision in the Receivership Order." *Id.*

In relying exclusively on Maryland tolling law, while applicable, the parties have not presented the Court with authority pertinent to a case such as this one, which involves the Court's ancillary jurisdiction pursuant to an ongoing court-appointed receivership that necessarily implicates the Court's equitable power. "A suit is ancillary to a receiver's appointment if it 'seeks to accomplish the ends sought and directed by the suit in which the appointment was made.'" *Klein v. Cornelius*, 786 F.3d 1310, 1315 (10th Cir. 2015) (quoting *Eberhard v. Marcu*, 530 F.3d

122, 129 (2d Cir. 2008)); *see also Liberte Cap. Grp. v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) ("The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." (citing 13 *Moore's Federal Practice* ¶¶ 66.02–.03 (3d ed. 1999))). Such is the goal here. In the Enforcement Action, this Court appointed the receiver as "necessary and appropriate for the purposes of marshaling and preserving all assets of [the Receivership Defendants and their affiliated entities]."[12] *See* Enforcement Action, ECF 62, at 1–2. In the present action, "[t]he Receiver's ultimate goal is to maximize the recovery of assets to provide the greatest benefit and recovery to the defrauded investors and other eligible claimants," ECF 1, at 1 ¶ 2, and to "return [the Net Winnings funds] to the Receivership Estate," *id.* at 2 ¶ 5. "As an officer of the court, the receiver's powers are coextensive with his order of appointment." *Liberte Cap. Grp.*, 462 F.3d at 551 (citing 13 *Moore's Federal Practice* ¶¶ 66.02–.03 (3d ed. 1999)).

"[T]he district court's power to supervise a receivership is 'extremely broad' . . . ." *CCWB Asset Invs., LLC*, 112 F.4th at 178 (quoting *SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005)); *see also SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 332 (7th Cir. 2010) (explaining

---

[12] The Receivership Parties include Merrill, Ledford; Jezierski; Global Credit Recovery, LLC; Delmarva Capital, LLC; Rhino Capital Holdings, LLC; Rhino Capital Group, LLC; DeVille Asset Management LTD; Riverwalk Financial Corporation; K.B. Merrill Associates; Financial Reclamation Group LLC; Halo Credit Solutions LLC; JBL Holdings LLC; Jay B. Ledford, P.C.; the Joseph Finance Company; Leddy Bear LTD; Ledford & Associates, PLLC; King Fischer LTD d/b/a LP Investments LTD; NLEX, Inc.; Receivables Portfolio Interchange, Inc.; Riverwalk Capital Investments, Inc.; Riverwalk Credit Solutions, Inc.; Riverwalk Debt Solutions, Inc.; Riverwalk Fixed Asset Group LLC; SCUSA Financial, Inc.; Vaquero Asset Management, Inc.; CRJ Holdings LLC; Centurion Capital Corporation; GCR CBL CP I, LLC; GCR CBL CP II, LLC; GCR CBL CP III, LLC; GCR CBL CP IV, LLC; GCR HCP Holdings 1, LLC; GCR Mercer Holdings, LLC; the J Trust; and the Kevin B. Merrill Revocable Trust. *See* ECF 1, at 5 n.2; Enforcement Action, ECF 62, at 2 ¶ 1.

that district courts have "broad equitable power" in overseeing receiverships). "The goal of a receivership is 'the fair distribution of the liquidated assets.'" *CCWB Asset Invs., LLC*, 112 F.4th at 178 (quoting *Wealth Mgmt. LLC*, 628 F.3d at 334).

Provisions staying litigation are common in receivership orders, and federal courts across the country have long upheld district courts' power to impose litigation stays in such cases. *See SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ("An anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership."); *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) ("The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action."); *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005) ("The purposes of a receivership are varied, but the purpose of imposing a stay of litigation is clear. A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant."); *SEC v. Stanford Int'l Bank, Ltd.*, 424 F. App'x 338, 340 (5th Cir. 2011) (per curiam) ("It is axiomatic that a district court has broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC actions.").

This power extends even over non-parties in SEC enforcement and receivership actions. *See Acorn Tech. Fund., L.P.*, 429 F.3d at 442 (explaining that the Ninth Circuit in *Wencke* "affirmed the inherent power of a District Court to enter a valid stay of litigation *effective even against nonparties to the receivership action*" (emphasis in original) (citing *Wencke*, 622 F.2d at 1363))). "Because the court's power of injunction in a receivership proceeding arises from its power over the assets in question, non-parties to the underlying litigation may be bound by a

blanket stay, so long as the non-parties have notice of the injunction." *Liberte Cap. Grp., LLC*, 462 F.3d at 552. Such stay provisions may also expressly toll the statute of limitations. *See SEC v. Alleca*, No. 21-13486, 2022 WL 16631325, at *3 (11th Cir. Nov. 2, 2022). In *Alleca*, the Eleventh Circuit rejected a challenge to a tolling provision in a prior receivership order. *Id.* at *3. An intervenor to the SEC enforcement action argued that the provision of the receivership order tolling applicable statutes of limitation amounted to an unlawful indefinite stay. *Id.* The Eleventh Circuit found this argument unpersuasive, and ultimately upheld the tolling provision finding that "the fraudulent-transfer issue was properly resolved in the context of the receivership, and so was appropriately subject to tolling." *Id.*

Importantly, Defendants' framing of the statute of limitation issue here, and, by extension, Plaintiff's in response, does not precisely reflect the posture of the instant case. Defendants' argument assumes that the Court is now deciding for the first time whether to toll the statute of limitations. But the Receivership Orders *did* expressly toll the statute of limitations. *See, e.g.*, Enforcement Action, ECF 62, at 19 ¶ 36 ("[A]s to any and all claims or causes of action under applicable law that have accrued or are accruing regarding transfers and transactions of fraudulently obtained investor funds (or proceeds thereof) to third parties, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action."); Enforcement Action, ECF 484, at 20 ¶ 36 (same). Were the Court to now find that the Receivership Orders could not toll the statute of limitations, it would necessarily have to vacate the tolling provision of the Receivership Orders, which were amended and re-entered several times in the Enforcement Action. Further, Plaintiff was a party to that action, as court-appointed receiver, and therefore was bound by the litigation stay in the Receivership Orders. Had Plaintiff filed the instant action before the litigation stay was

lifted, he would have acted in direct contravention of the Receivership Orders. No party presents the Court with authority relevant to these specific factors present here or, more generally, a collateral attack on the explicit tolling provisions of a prior court order.[13]

While the Court is mindful of the due process concerns raised by Defendants, other courts facing similar challenges to litigation stays in receivership orders have held that such challenges must be brought in the action in which the orders were entered, not upon collateral attack. In *Liberte Capital Group*, insurers appealed a district court order finding them in contempt for violating a litigation stay of claims brought against the receiver, receivership parties, or receivership assets, which was entered pursuant to an ongoing receivership case. *Id.* at 547. The basis for the contempt order was that the insurers, who were not parties to the receivership litigation, filed an action in Delaware Superior Court seeking declaratory relief as to their obligations on certain policies that were part of the receivership estate. *Id.* at 547–49. The Sixth Circuit determined that "due process concerns about the scope of the injunction [were] not properly before" it because the orders imposing the litigation stay—entered in the receivership proceeding, not the contempt proceeding—were not on appeal before it, because the insurers had notice of the litigation stay as at least one insurer had sought intervention in that case,[14] and because the insurers could raise the due process concerns directly in the receivership action. *Id.* at 556. The Northern

_____

[13] To the extent Defendants advance that the analysis should change because the Receiver proposed the amended Receivership Orders (the SEC proposed the first order), the Court sees no reason that this fact should play any role in the analysis. The Receivership Orders are orders of this Court, regardless of who may have initially drafted them. Indeed, this Court requires moving parties to provide such proposed orders. *See* Loc. R. 105.1 (D. Md. 2023) ("Any motion and opposition to a motion shall be filed with the Clerk and be accompanied by a memorandum setting forth the reasoning and authorities in support of it *and a proposed order*.") (emphasis added).

[14] The intervention, which was not based on due process concerns of the litigation stay but on the receiver's seeking of permission to sell insurance policies that the government had deemed fraudulent, was denied. *See Liberte Cap. Grp.*, 462 F.3d at 548.

District of Illinois has also rejected a due process challenge to an order entered pursuant a receivership, finding that the defendant in the subsequent action's "arguments regarding the validity of the Consent Order of Receivership lack sufficient factual basis and challenges to that order must be brought before [the judge overseeing the receivership action] because this Court lacks the power to review a collateral attack on an order entered in another district court case." *U.S. Small Bus. Admin. for Cardinal Growth, L.P. v. McInerney*, No. 16 CV 7099, 2017 WL 1710271, at *3 (N.D. Ill. May 3, 2017), *on reconsideration on other grounds sub nom. U.S. Small Bus. Admin. v. McInerney*, No. 16 CV 7099, 2017 WL 11700105 (N.D. Ill. July 27, 2017).[15]

Plaintiff asserts that at least the May Defendants here utilized the Enforcement Action's claims process and were therefore afforded appropriate notice of the tolling provision of the Receivership Orders.[16] *See* ECF 43, at 8. The May Defendants do not deny this assertion, instead arguing that because they were not *parties* to the Enforcement Action, they "did not have a reasonable opportunity to challenge the tolling provisions of the Receivership Orders (even assuming they had some constructive notice of them)." ECF 45, at 7. Plaintiff does not make the same assertion as to the other Defendants, and from the face of the complaint, it is not clear which Defendants here took advantage of the claims process in the Enforcement Action or even to whom Receiver sent notice of potential claims. The Court need not decide at this time whether

---

[15] The Court is also aware of *Taylor v. Trevino*, where the Northern District of Texas held that a tolling provision of a receivership order could not toll the accrual of the Texas Uniform Fraudulent Transfer Act cause of action. 569 F. Supp. 3d 414, 426 (N.D. Tex. 2021). Integral to that holding, however, was the fact that Texas has a statute of repose, not a statute of limitations, meaning the cause of action is extinguished upon the running of the statute, and it cannot be tolled. *See id.* at 424, 426. The applicable statute of limitations here, by contrast, is indeed a statute of limitations, not repose. *Murphy v. Liberty Mut. Ins. Co.*, 274 A.3d 412, 418 n.5 (Md. 2022).

[16] The Court, by order, established a claims processing procedure by which the Receiver would facilitate notice to investors in the Ponzi scheme. *See* Enforcement Action, ECF 396.

Defendants were afforded sufficient notice of the tolling provisions or whether any such challenges should be brought in the Enforcement Action where the Receivership Orders were entered.

The Court declines to find the complaint barred by the statute of limitations where this Court has – and continues to – exercise its broad equitable powers in overseeing a multimillion-dollar receivership, where the Receivership Orders expressly tolled the statute of limitations for exactly these types of claims, and where the Receivership Orders expressly barred the Receiver from bringing such claims until permitted by the Court overseeing the Enforcement Action. At this juncture, it is enough to say that Defendants have not met the burden for dismissal based on statute of limitations. *Green*, 31 F. Supp. 3d at 722 (citing *Litz*, 76 A.3d at 1086); *see also Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) ("If there is a genuine dispute of material fact as to when the plaintiff was on inquiry notice, summary judgment is inappropriate." (citing *Bank of New York v. Sheff*, 854 A.2d 1269, 1275 (Md. 2004))), *aff'd*, 495 F. App'x 350 (4th Cir. 2012). The Court denies the motions to dismiss on this basis.[17]

---

[17] Even if the Court did find that the provisions of the Receivership Orders tolling of the statute of limitations were invalid, it is not entirely clear when the statute of limitations began to run. Defendants assert, at least for at the motion to dismiss stage, that the *latest* the statute of limitations began to run was September 13, 2018—the date the receiver was appointed. *See, e.g.*, ECF 41-1, at 6. However, courts across the country have rejected this argument in similar cases, applying the discovery rule and finding that the statute can only *begin* to run once the receiver is appointed because the alleged wrongdoer remained in control of the receivership entity until that point, and the receiver could not bring the claims before his appointment. *See, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 193–94 (5th Cir. 2013)); *Clark v. Milam*, 872 F. Supp. 307, 312 (S.D. W. Va. 1994); *Quilling v. Cristell*, No. CIV.A. 304CV252, 2006 WL 316981, at *6 (W.D.N.C. Feb. 9, 2006) (citing *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 772 (4th Cir. 1995)); *Hecht v. Malvern Preparatory Sch.*, 716 F. Supp. 2d 395, 399 (E.D. Pa. 2010); *Klein v. Abdulbaki*, No. 2:11-CV-00953, 2012 WL 2317357, at *6 (D. Utah June 18, 2012). Others have gone even farther, finding that on the date of appointment, the receiver is only on notice that an investor participated in the Ponzi scheme, but not that any participants were net winners. *See Donell v. Mojtahedian*, 976 F. Supp. 2d 1183, 1187 (C.D. Cal. 2013); *Warfield v. Carnie*, No. 3:04–CV–633–R, 2007 WL 1112591, at *19 (N.D. Tex. Apr. 13, 2007)).

**B.    Plaintiff Has Stated a Claim Under 12(b)(6) for Fraudulent Conveyance Under the MUFCA.**

Defendants argue that Plaintiff has failed to state a claim for fraudulent conveyance under the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), Md. Code Ann., Comm. Law § 15-201 *et seq. See, e.g.*, ECF 41-1, at 9. Defendants argue that because "the Receiver does [not] allege that he or the Receivership Parties are a creditor," his MUFCA claims fail because "a fraudulent conveyance under the MUFCA is fraudulent only as to that person or entity's *creditors*." *Id.* (emphasis in original). As "the Receivership Parties (and [the Receiver] as representative of those entities) were the entities making the fraudulent conveyances, not creditors who can properly pursue remedies under the MUFCA." *Id.* at 9–10. Defendants rely on one unpublished case from the Middle District of Florida, *In re Wiand*, No. 8:05CV1856 T27MSS, 2007 WL 963165 (M.D. Fla. Mar. 27, 2007). In that case, the court found that the receiver had failed to state a fraudulent conveyance claim against supposed "net winners" of a Ponzi scheme because the receiver there did not allege "the statutory requirements of [the Florida Uniform Fraudulent Transfer Act], and to some extent, [the allegations] are inconsistent therewith, . . . that he or the Receivership Entities are 'creditors,' and if so, *which* entity is a 'creditor[,]' . . . identify any alleged 'debtor(s)[,]', . . . [or] what 'claim' the unidentified 'creditor'' possesses against the unidentified "debtor."" *Id.* at *4 (citing *Southmark Corp. v. Cagan,* 999 F.2d 216, 222 (7th Cir. 1993)) (emphasis in *In re Wiand*).

In reply, the May Defendants clarify that their argument is not that Plaintiff lacks standing to bring the suit. ECF 45, at 8. Indeed, no defendant challenges the Receiver's standing to bring the fraudulent conveyance claim. Rather, Defendants' argument is that "only creditors have remedies under the MUFCA; the Receiver does not allege that he was a creditor; and the

Complaint's allegations are inconsistent with the Receiver being a creditor."[18]   *Id.*   Some

Defendants also argue that the complaint is deficient because it fails to identify under which statute

Plaintiff seeks recovery. *See* ECF 137, at 8. These arguments are unpersuasive.

Under the MUFCA, as relevant here, a transfer may be avoided as a fraudulent conveyance

in the following circumstances: (1) if the conveyance is made "by a person who is or will be

rendered insolvent by it" and "without a fair consideration," Md. Code Ann., Com. Law § 15-204,

or (2) if the conveyance is made "with actual intent, as distinguished from intent presumed in law,

to hinder, delay, or defraud present or future creditors," *id.* § 15-207.[19]   *See also Nat'l Mortg.*

---

[18] To the extent that any Defendants' argument for dismissal is premised on the Receiver's lack of standing, that argument has been rejected repeatedly by courts within this district and around the country, including by federal and state appellate courts alike. *See Scholes v. Lehmann*, 56 F.3d 750, 753–55 (7th Cir. 1995); *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013) (recognizing *Scholes* as the leading case "explaining the principles that govern a federally appointed receiver's action under a [state uniform fraudulent transfer laws] to recover assets that the operator of a Ponzi scheme caused to be fraudulently transferred to a third party without fair consideration"); *id.* at 191 n.4 and n.5 (collecting cases). "This view—that a federal equity receiver representing a corporate entity used to perpetrate a Ponzi scheme has standing to bring claims against third-party recipients of the entity's assets that were wrongfully transferred by the Ponzi scheme's principal—has been accepted by a number of the federal courts of appeals, by a district court within the Fourth Circuit, and has been viewed favorably by both South Carolina courts, and Florida courts." *Ashmore for Wilson v. Dodds*, 262 F. Supp. 3d 341, 349 (D.S.C. 2017) (citations omitted).

[19] The MUFCA recognizes other theories under which a plaintiff may plead a fraudulent conveyance claim. *See e.g.*, Md. Code Ann., Com. Law § 15-205 (conveyance made "without fair consideration [and] when the person who makes it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital"); *id.* § 15-206 (conveyance made "without fair consideration [and] when the person who makes the conveyance or who enters into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature"). However, Plaintiff here appears to only allege claims under § 15-204 and § 15-207. *See* ECF 1, at 9–10 ¶ 28 ("The Receiver may avoid (i) transfers made by insolvent Receivership Parties if the transfer is made without fair consideration or in exchange for reasonably equivalent value or (ii) transfers made with the actual intent to hinder, delay, or defraud creditors.").

*Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 502–03 (D. Md. 2002) (describing the elements of fraudulent conveyance in Maryland).

At the outset, the Court acknowledges that while failing to cite a specific statute under which a plaintiff makes a claim undoubtedly muddles analysis of the sufficiency of a complaint, it does not necessarily automatically render the complaint deficient. *See* Fed. R. Civ. P. 8(a) (requiring a "pleading that states claim for relief" to include "(1) a short and plain statement of the grounds for the court's jurisdiction"; "(2) a short and plain statement of the claim showing that the pleader is entitled to relief"; and "(3) a demand for the relief sought"). As explained below, the Court is able to make out factual allegations that, at minimum, meet the elements of a fraudulent conveyance claim pled under § 15-204 and § 15-207, and that is sufficient to state a claim for relief under federal pleading rules.

As for the factual allegations, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Such is the case here.

First, the Court is not convinced by the argument that because Plaintiff did not specifically allege that he was a "creditor," his fraudulent conveyance claim is doomed. Under the MUFCA, "'[c]reditor' means a person who has any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." Md. Code Ann., Com. Law § 15-201(d). Nothing in the plain language of this definition appears to preclude a receiver stepping into the shoes of a receivership entity pursuant to an equity receivership to assert fraudulent conveyance claims. As

18

noted *supra* note 18, courts have routinely recognized that "a federal equity receiver representing a corporate entity used to perpetrate a Ponzi scheme has standing to bring claims against third-party recipients of the entity's assets that were wrongfully transferred by the Ponzi scheme's principal . . . ." *Ashmore for Wilson v. Dodds*, 262 F. Supp. 3d 341, 349 (D.S.C. 2017); *see also Robb Evans & Assocs. LLC v. Diaz-Cueto*, Civ. No. 21-2049-PJM, 2022 WL 3213611, at *17 (D. Md. Aug. 9, 2022) ("The Court agrees with the Receiver. Whether or not the Receiver is a creditor of [a receivership entity] is inapposite. The Receiver may bring its fraudulent transfer claims based on its standing to bring actions on behalf of Receivership Entities.") (applying the California Uniform Voidable Transactions Act).[20]

Second, courts have routinely held that a transfer made pursuant to a Ponzi scheme's operation was made with fraudulent intent. *See, e.g.*, *In re Whitley*, 463 B.R. 775, 781 (Bankr. M.D.N.C. 2012) ("Transfers in furtherance of a Ponzi scheme 'have achieved a special status in fraudulent transfer law' from which intent of actual fraud may be inferred." (quoting *In re Cohen*, 199 B.R. 709, 717 (9th Cir. BAP 1996))); *Donell*, 533 F.3d at 770–71; *Terry v. June*, 432 F. Supp. 2d 635, 640 (W.D. Va. 2006) ("Numerous courts have found that a criminal conviction for operating a Ponzi scheme establishes the operator's fraudulent intent and precludes relitigation of this issue.") (collecting cases).[21]

---

[20] What's more, the Ninth Circuit has explained that "[t]he Ponzi scheme operator is the 'debtor,' and each investor is a 'creditor.'" *Donell*, 533 F.3d at 767 (citing *Scholes*, 56 F.3d at 755).

[21] The Court recognizes that some of the cases cited as persuasive authority evaluate claims made under state versions of the Uniform Fraudulent Transfer Act ("UFTA") and Uniform Voidable Transactions Act ("UVTA") or under the federal bankruptcy code. *See, e.g.*, *Robb Evans & Assocs. LLC*, 2022 WL 3213611, at *16 (applying California's version of the UVTA); *In re Whitley*, 463 B.R. at 781 (federal bankruptcy code and North Carolina UFTA). Maryland is seemingly one of the only, if not the only, state which still applies a version of the Uniform Fraudulent Conveyance Act. *See Redemption Holdings, Inc. v. Gov't of the Virgin Islands*, 65 V.I. 243, 250–51 (2016) ("A review of the current codes in the 26 jurisdictions that had adopted the

Moreover, the complaint includes sufficient factual material to meet federal pleading standards under Rule 8. The complaint includes factual details about the underlying cases—the Criminal Action and, more importantly, the Enforcement Action—which form the predicate for the fraudulent conveyance allegations. The complaint alleges that Merrill, Ledford, and Jezierski utilized the Receivership Parties to orchestrate a Ponzi scheme for which they ultimately pled guilty. *See* ECF 1, at 7 ¶¶ 20–22. The complaint alleges that Defendants to this action recouped about $27 million total, ranging in individual amounts between about $20,000 and $1.85 million, as "net winnings," which were not legitimate returns on the sale of debt portfolios but money paid by later investors to the scheme. *Id.* at 7–8 ¶¶ 23–24. The appendix to the complaint lists the specific principal investments allegedly paid by Defendants to the Receivership Parties and the amount each allegedly received in as fictious profits in return.[22] *See* ECF 1-1. The complaint alleges that Defendants "did not provide reasonably equivalent value" for their principal investments, ECF 1, at 8 ¶ 24, at 9 ¶ 27, and that the Receivership Parties were insolvent at the time of the transfers, *id.* at 9 ¶ 27. The complaint further alleges that "the Receivership Parties transferred the Net Winnings to [Defendants] with actual intent to hinder, delay, or defraud their creditors" as part of the Ponzi scheme. *Id.* Further, the complaint alleges that Plaintiff was

UFCA indicates that Maryland and New York are the only jurisdictions that still retain the UFCA."). However, any difference in the statutes is immaterial here as the language of the relevant statutes are substantially the same across jurisdictions, if not identical. Further, given the dearth of Maryland cases assessing clawback actions resulting from Ponzi schemes, the fact that the parties have also pointed the Court to cases analyzing other jurisdictions' fraudulent conveyance statutes, and the relative uniformity across jurisdictions applying differing state fraudulent conveyance statutes, the Court sees no reason to deviate from such widely accepted principles here.

[22] Though the principal investment amounts are blank as to the Wahl Defendants, Morse, and several other Defendants who have not moved to dismiss the complaint, the appendix does include the alleged distributions and "net winnings" received. *See* ECF 1-1.

appointed as Receiver of the Receivership Parties "to marshal and preserve the assets" of the

Receivership Parties, ECF 1, at 5 ¶ 15, with the "goal . . . to maximize the recovery of assets to

provide the greatest benefit and recovery to the defrauded investors and other eligible claimants."

*id.* at 1 ¶ 2.  To the extent "Defendants complain specifically that the Receiver provides few details

about the specifics surrounding the transfers between the Receivership Entities and the Defendants

herein, . . . [t]he Receiver did not . . . need to include these details in its complaint." *Evans v.

Armenta*, 134 F. Supp. 3d 1052, 1057–58 (E.D. Ky. 2015) (citing *Iqbal*, 556 U.S. at 678).  As the

Sixth Circuit put it:

> Although the Receiver did not expressly state that his claim was one that could have
> been brought by a receivership entity, the Receiver did incorporate by reference the
> court's prior orders establishing the receivership. The court reasonably inferred
> from the Receiver's reference to that order that he was claiming to act on behalf of
> one of the receivership entities, albeit for the ultimate benefit of the receivership
> entities' investors.

*Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 795–96 (6th Cir. 2009).  Thus, the Court

finds that there is sufficient factual material from which the Court can "draw the reasonable

inference" that Defendants are liable under a theory of fraudulent conveyance. *See Iqbal*, 556 U.S.

at 678.[23]  The Court declines to dismiss the fraudulent conveyance claim for failure to state a claim

under Rule 12(b)(6).

---

[23] The Court is not persuaded that listing the dozens of defendants in the appendix, rather than in
the body of the complaint itself proves fatal to the complaint.  The complaint incorporates and
repeatedly refers to the appendix. *See e.g.*, ECF 1, at 2 ¶ 4 ("These investors (Defendants in this
Action) are identified in the attached Appendix and are collectively referred to as the 'Net
Winners.'"); *id.* ¶ 5 ("At a minimum, the Net Winners named in the Appendix received over $26.7
million in distributions, of which $12.6 million were Net Winnings"), at 3 ¶ 6 (noting the complaint
seeks an order "finding the amount of Net Winnings each of the Net Winners received in the
amounts set forth in the Appendix to this Complaint"); *id.* ¶ 8 ("The Defendants (*i.e.*, the Net
Winners) in the attached Appendix may be served with process pursuant to the Federal Rules of
Civil Procedure at the addresses identified in the attached Appendix, through their attorneys of
record identified in the attached Appendix . . . .").  As explained, the complaint, coupled with the

### C.   Rule 9(b) Does Not Mandate Dismissal.

Some Defendants argue that the complaint should be dismissed for failure to comply with Fed. R. Civ. P. 9(b)'s heightened pleading standard. Rule 9(b) says: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." As an initial matter, "the Fourth Circuit has not decided whether fraudulent conveyances trigger Rule 9(b)'s heightened pleading standard." *W. Inv. Foreign Shares, LLC v. McCollum*, 638 F. Supp. 3d 595, 608 (W.D.N.C. 2022) (citing *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 118 (5th Cir. 2019)). Though "[s]ome courts claim that all fraudulent conveyances trigger Rule 9(b)[,] . . . the greater weight of authority finds that *actual* fraudulent transfer claims are governed by Rule 9(b), whereas *constructive* fraudulent transfer cases are not." *Id.* (citing *In re Air Cargo, Inc.*, 401 B.R. 178, 192 n.7 (Bankr. D. Md. 2008)).[24]

The distinction does not matter here as the Court is satisfied that the complaint meets the heightened pleading standard. To be sure, though the complaint, through the appendix, lists only the principal amounts allegedly invested in the underlying Ponzi scheme, and not the date of those transfers, *see* ECF 1-1, it does allege, in addition to the details of the Ponzi scheme described above, the date range in which the transfers took place. *See* ECF 1, at 1 ¶ 1, at 7 ¶ 21 (noting that Merrill and Ledford perpetrated the Ponzi scheme from 2013 to 2018). Courts have found such

---

appendix, provide sufficient notice to the defendants to comply with the federal pleading requirements announced in *Twombly* and *Iqbal*.

[24] The District of Utah has explained that in the context of fraudulent conveyance clawback actions brought in relation to an equity receivership, "the difference between intentional and constructive fraudulent transfer claims is far less significant because an inference of fraudulent intent applies to transfers made pursuant to a Ponzi scheme" and the claim does not rest on the alleged fraud of the net winner. *Wing v. Horn*, No. 2:09-CV-00342, 2009 WL 2843342, at *4 (D. Utah Aug. 28, 2009).

allegations sufficient under Rule 9(b) in similar circumstances. *See Bell v. Disner*, No. 3:14CV91, 2014 WL 6978690, at \*6 (W.D.N.C. Dec. 9, 2014) (finding that a receiver met federal pleading standards when the complaint "set[] forth in great detail the existence of the RVG Ponzi scheme, the manner in which it operated, the amount of funds transferred to the named Defendants, and the general timeframe of the transfers" and finding "unnecessary and unwarranted" the notion that the receiver should have "allege[d] the specific dates and amounts of each of the" allegedly fraudulent transfers); *Janvey v. Alguire*, 846 F. Supp. 2d 662, 677 (N.D. Tex. 2011) (finding Rule 9(b) standard met where the complaint described the underlying Ponzi scheme, specified the amounts the defendants were alleged to have received, and alleged "the time period in which he believes the transfer of fraudulently-obtained funds occurred"); *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 119 (5th Cir. 2019) (finding that "details of the allegedly fraudulent transfers—including the transferor, transferees, amounts, and time period—and . . . allegations detailing the underlying fraudulent scheme" were sufficient to state a claim under Rule 9(b)).

"As a general rule," the Fourth Circuit has cautioned that "a court 'should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *United States ex rel. Bunk v. Gov't Logistics N.V.*, 842 F.3d 261, 275 (4th Cir. 2016) (quoting *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th Cir. 2015); *see also Nat'l Mortg. Warehouse, LLC*, 201 F. Supp. 2d at 504–05. Given that the complaint provides extensive detail about the underlying Ponzi scheme, including the related Criminal and Enforcement Actions which have been underway since 2018, the Court finds that Defendants are on sufficient notice of the allegations they must each defend to satisfy Rule 9(b). *See Bell*, 2014 WL 6978690, at \*6 n.2.

For these reasons, the Court declines to dismiss the fraudulent conveyance claim under Rule 9(b).

### D.  Plaintiff Has Stated a Claim for Unjust Enrichment in the Alternative to Fraudulent Conveyance.

Plaintiff pleads unjust enrichment in the alternative to fraudulent conveyance. *See* ECF 1, at 10–11 ¶¶ 31–34. A Maryland claim for unjust enrichment contains three elements: (1) "[a] benefit conferred upon the defendant by the plaintiff"; (2) "(a)n appreciation or knowledge by the defendant of the benefit"; and (3) "[t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) (quoting *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)). At the same time, the doctrine of unjust enrichment "may not be reduced neatly to a golden rule." *Id.* "A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.'" *Id.* at 352 (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 886 A.2d 900, 921 (Md. App. 2005)).

Defendants' arguments target the second and third elements of the unjust enrichment claim. As to the second element, Defendants argue that the complaint is devoid of "any allegation that the Defendants had knowledge of any benefit being conferred" and of "any facts that would support the conclusion that the Defendants appreciated any benefit that was conferred," ECF 137-1, at 10. The Court disagrees. The benefits allegedly received by Defendants are the "Net Winnings" received from their investments in the Ponzi scheme. *See* ECF 1, at 10 ¶ 31. "When the benefit conferred is money, there is no requirement that a defendant necessarily have knowledge or appreciation of the benefit precisely at the time the benefit is conferred." *Hill*, 936

24

A.2d at 354.  Further, to the extent this argument rests on the premise that the "appreciation or knowledge" element refers to a defendant's awareness of the origins of the benefit, under a theory of unjust enrichment, "a plaintiff could recover money from even an innocent transferee who was without knowledge that he possessed the plaintiff's money." *Plitt v. Greenberg*, 219 A.2d 237, 241 (Md. 1966).

As to the third element, Defendants argue that the complaint does not sufficiently state a claim for unjust enrichment because it contains "no factual allegations explaining why [Defendants'] retention of [their] alleged 'net winnings' would be unjust." ECF 41-1, at 10.  On this element, Defendants point to *Johnson v. Studholme*, a District of Colorado case asserting that "these are not circumstances in which it would be inequitable for the defendants to retain the payments to them." ECF 41-1, at 11 (quoting 619 F. Supp. 1347, 1350 (D. Colo. 1985), *aff'd sub nom. Johnson v. Hendricks*, 833 F.2d 908 (10th Cir. 1987)).  Preliminarily, *Johnson* predates many cases involving clawback actions stemming from Ponzi schemes, including pivotal ones such as *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995), and its conclusion appears to conflict with *Scholes* and its progeny.  *Compare Johnson*, 619 F. Supp. at 1349 (D. Colo. 1985) ("In short, research has uncovered no case in which a receiver of the defrauding entity has recovered payments to Ponzi scheme investors who received more than their contribution."), *with Wiand v. Morgan*, 919 F. Supp. 2d 1342, 1355 (M.D. Fla. 2013) (citing *Scholes* as standing for the "general rule is that to extent innocent investors received payments in excess of amounts of principal originally invested, payments are avoidable as fraudulent transfers").  The complaint here alleges that

> [t]he distributions the Net Winners received from the Receivership Parties in excess of their principal investment were not, in fact, their actual principal or profits earned on the funds they invested. Instead, the money used to make those payments came directly from the principal investments of other subsequent investors.

ECF 1, at 2 ¶ 4. Thus, the Court declines to apply *Johnson*'s reasoning.

Some plaintiffs challenge Plaintiff's standing as receiver to bring the unjust enrichment claim. *See, e.g.*, ECF 83-1, at 14. In *Evans v. Armenta*, a receiver, appointed by the court pursuant to a Federal Trade Commission enforcement action, brought fraudulent conveyance and unjust enrichment claims in an ancillary suit to recover profits received pursuant to an illegal multilevel marketing pyramid scheme. 134 F. Supp. 3d at 1054. Defendants there argued

> that the Receiver lacks standing because the claims asserted actually belong to the creditors of the Receivership companies, as opposed to the Receivership companies themselves. The Receiver disagrees, arguing that the complaint alleges injury against the Receivership Entities, and that the fact that creditors will benefit from the Receivership Entities' recovery is really incidental.

*Id.* at 1060. The Eastern District of Kentucky ultimately rejected this challenge, applying the reasoning in *Scholes* to both claims. *Id.* at 1061–62 ("As articulated by the Receiver, courts across the nation have held that receivers of corporate entities have standing to sue to recover funds or assets fraudulently transferred by those entities prior to the receivership." (internal quotation omitted)); *see also Wiand v. Morgan*, 919 F. Supp. 2d 1342, 1366 (M.D. Fla. 2013) ("Courts have consistently recognized that when a ponzi scheme's perpetrator diverts money that investors intended to invest with a receivership entity, the entity is harmed, even if the entity is controlled by the scheme's perpetrator and used exclusively to perpetrate the scheme."). Similarly, in *Hecht v. Malvern Preparatory School*, the Eastern District of Pennsylvania found that a receiver had properly pled an unjust enrichment claim under Pennsylvania law[25] to recover Ponzi profits that

---

[25] The elements of an unjust enrichment claim under Pennsylvania law are the same as those under Maryland law. *See Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa. Super. 2008) (quoting *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993)) (explaining that a Pennsylvania unjust enrichment claim consists of "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under

had been transferred to the school as charitable donations. 716 F. Supp. 2d 395, 402–03 (E.D. Pa. 2010). Other courts have likewise held that a receiver has standing to bring both a fraudulent conveyance and a related equitable claim in clawback actions. *See Donell*, 533 F.3d at 776 ("We are aware that it may create a significant hardship when an innocent investor such as Kowell is informed that he must disgorge profits he earned innocently, often years after the money has been received and spent. Nevertheless, courts have long held that it is more equitable to attempt to distribute all recoverable assets among the defrauded investors who did not recover their initial investments rather than to allow the losses to rest where they fell."); *Bell*, 2014 WL 6978690, at *8 (finding that a complaint sufficiently alleged that it would be inequitable for defendants to keep funds received "from an admitted Ponzi and pyramid scheme, [which were] nothing more than other people's money wrongfully diverted from RVG" (footnote omitted)); *Wing v. Hammons*, No. 2:08-CV-00620, 2009 WL 1362389, at *3 (D. Utah May 14, 2009) ("The Court therefore holds that the Receiver has standing to assert fraudulent transfer and unjust enrichment claims against the alleged 'winners' of Southwick's Ponzi scheme. The entities in receivership were injured when Southwick used them to commit fraud and waste."); *Carney v. Montes*, No. 3:12-CV-00183 SRU, 2014 WL 671263, at *13 (D. Conn. Feb. 21, 2014) ("It is a close question but, in light of the complexity of the scheme and the equitable nature of actions for unjust enrichment and 'money had and received,' the motion to dismiss these equitable claims fails.").

At this stage of the litigation, the Court is satisfied that Plaintiff has pled a claim for unjust enrichment in the alternative to the fraudulent conveyance claim. The motions to dismiss are denied.

---

such circumstances that it would be inequitable for defendant to retain the benefit without payment of value")

## IV.    **CONCLUSION**

For the foregoing reasons, the pending motions to dismiss, ECFs 41, 74, 83, 86, 95, 99, 103, and 137, are DENIED.   A separate implementing Order will issue.


Dated: <u>September 26, 2024</u>

_____<u>/s/</u>_____

Brendan A. Hurson
United States District Judge
