IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| GREGORY S. MILLIGAN, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR GLOBAL CREDIT RECOVERY, LLC, ET AL., | * |
| | * |
| Plaintiff, | * |
| v. | * |
| JOHN JEFFREY MAY ET AL., | * |
| Defendants. | * |

Civil No. 23-2691-BAH

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Receiver Gregory S. Milligan ("the Receiver" or "Plaintiff") brought suit against

fifty-seven individuals and entities (collectively "Defendants") seeking recovery of "net winnings"

or "fictitious profits" Defendants allegedly received as a result of their investment in a

multimillion-dollar Ponzi scheme.[1]  ECF 1.  This Court previously denied a number of motions to

dismiss.  *See* ECF 41 (motion to dismiss filed by Defendants Logic Growth, LLC, and John Jeffrey

May ("May Defendants")); ECF 74 (motion to dismiss filed by Defendant Jahed A. Hamrah); ECF

83 (motion to dismiss filed by Defendant Belquis Sadozai); ECF 86 (motion to dismiss filed by

Defendant Zarghoona Sadozai); ECF 95 (motion to dismiss filed by Defendants Double H

International Holdings, Inc., and Richard Hall ("Double H Defendants")); ECF 99 (motion to

dismiss filed by Defendant Barry G. Morse); ECF 103 (motion to dismiss filed by Defendants

Lana Wahl, Vicky Wahl, and George Wahl III); ECF 137 (motion to dismiss filed by Defendants

---

[1] Such suits are often referred to as "clawback" actions. *See Wiand v. Cloud*, 919 F. Supp. 2d
1319, 1322 n.1 (M.D. Fla. 2013).

Aubrey Carter and Courtney Nowell); ECF 140 (memorandum opinion); ECF 141 (implementing order). The Double H Defendants subsequently lodged an indemnification counterclaim against the Receiver, *see* ECF 143, at 9–10 ¶¶ 8–15 (counterclaim count one), as did the May Defendants, *see* ECF 152, at 9–10 ¶¶ 15–24 (counterclaim counts one and two).[2]  Now pending before the Court and ripe for review are the following motions: (1) the Receiver's motion to dismiss the Double H Defendants' counterclaim,[3] ECF 153; (2) the Receiver's motion to dismiss the May Defendants' counterclaims,[4] ECF 156; and (3) Defendant Gary Day's motion to dismiss,[5] ECF 167.

The motions to dismiss the counterclaims include memoranda of law.[6]  The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).   Accordingly, for the reasons stated below, the Receiver's motions to dismiss the counterclaims are **GRANTED**, and Defendant Day's motion to dismiss is **DENIED**.

## I.    BACKGROUND

The Court previously explained the background of this case in its September 26, 2024 memorandum opinion. *See* ECF 140, at 2–5. The Court assumes the parties' familiarity with that background and will only repeat the especially pertinent parts here.  In sum, the instant dispute stems from a Ponzi scheme for which Kevin Merrill, Jay Ledford, and Cameron Jezierski

---

[2] The Court refers to the Double H Defendants and May Defendants collectively as the "Counterclaimants."

[3] The Double H Defendants filed an opposition, ECF 153, and the Receiver filed a reply, ECF 159.

[4] The May Defendants filed an opposition, ECF 160, and the Receiver filed a reply, ECF 165.

[5] The Receiver filed an opposition, ECF 170, and Defendant Day filed a reply, ECF 171.

[6] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

ultimately pled guilty in this Court. *See* ECF 1, at 1 ¶ 1, at 7 ¶ 20; Crim. No. 18-465-RDB (filed Sept. 11, 2018); *see also CCWB Asset Invs., LLC v. Milligan*, 112 F.4th 171, 175 (4th Cir. 2024). The Ponzi scheme led to the Securities and Exchange Commission ("SEC") filing an enforcement action. *See* Civ. No. 18-2844-RDB (herein after the "Enforcement Action"), ECF 1.

Of particular importance here, the same day the Enforcement Action was filed, the Court entered an order appointing Gregory S. Milligan as receiver and expressly forbidding that "[t]he Receiver shall not have the power to bring suits in law or in equity without further Order of this Court." *See* Enforcement Action, ECF 11 (hereinafter "Receivership Order"), at 4 ¶ 6. The Receivership Order was later amended three times, on November 27, 2018, *see* Enforcement Action, ECF 62 (hereinafter "First Amended Receivership Order"), on September 14, 2021, *see* Enforcement Action, ECF 484 (hereinafter "Second Amended Receivership Order"), and on October 4, 2023, *see* Enforcement Action, ECF 769 (hereinafter "Third Amended Receivership Order") (collectively, "Receivership Orders"). The First and Second Amended Receivership Orders contained the same prohibition as to the Receiver, with limited exceptions permitted by paragraph 37 of each of those orders. Enforcement Action, ECF 62, at 5 ¶ 6, at 19–20 ¶ 37; ECF 484, at 5 ¶ 6, at 20–21 ¶ 37. The Receivership Orders stayed all "Ancillary Proceedings,"[7]

---

[7] Under the Receivership Orders, "Ancillary Proceedings" are defined as follows:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) any of the Receivership Parties, including subsidiaries and partnerships; or, (d) any of the Receivership Parties' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise[.]

including civil actions against the Receiver in his capacity as receiver and enjoined the parties to such proceedings "from commencing or continuing any such legal proceeding." Enforcement Action, ECF 11, at 17–18 ¶¶ 34–35; ECF 62, at 18–19 ¶¶ 34–35; ECF 484, at 19–20 ¶¶ 34–35; ECF 769, at 20 ¶¶ 34–35. These orders also contained the following paragraph:

> 36. All Ancillary Proceedings not subject to Paragraph 37 below are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Parties against a third person or party, or as to any and all claims or causes of action under applicable law that have accrued or are accruing regarding transfers and transactions of fraudulently obtained investor funds (or proceeds thereof) to third parties, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

Enforcement Action, ECF 62, at 19 ¶ 36; ECF 484, at 20 ¶ 36; ECF 769, at 21 ¶ 36 (substantially the same but referring to paragraph 38 in addition to paragraph 37).[8] The Third Amended Receivership Order, however, partially lifted the stay with the following amendment:

> 38. The Court further modifies the above-described stay in part and amends the Second Amended Order Appointing Temporary Receiver to allow the Receiver, in consultation with Counsel for the SEC, to commence and prosecute such actions or proceedings in this Court to impose a constructive trust, obtain possession, recover judgment, and/or such other remedy that the Court determines just and equitable, with respect to persons or entities who received assets traceable to the Receivership Estate, including but not limited to disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, or collection of debts.

---

Enforcement Action, ECF 11, at 17–18 ¶ 34; ECF 62, at 18–19 ¶ 34; ECF 484, at 20 ¶ 34; ECF 769, at 20 ¶ 34.

[8] The original Receivership Order also stayed related litigation but did not include language about allegedly fraudulent transfers to third parties. *See* Enforcement Action, ECF 11, at 19 ¶ 36. The First Amended Receivership Order expressly expanded the litigation stay to "to any and all claims or causes of action under applicable law that have accrued or are accruing regarding transfers and transactions of fraudulently obtained investor funds (or proceeds thereof) to third parties." Enforcement Action, ECF 62, at 19 ¶ 36.

Enforcement Action, ECF 769, at 21–22 ¶ 38. The same day the Third Amended Receivership Order was entered (October 4, 2023), the Receiver brought this clawback action against Defendants, purported net winners in the Ponzi scheme, to recover the net winnings. *See* ECF 1, at 2 ¶ 4. The Court now turns to the pending motions.

## II.   **LEGAL STANDARDS**

### A.   **Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction, and the plaintiff (or party bringing the claim) bears the burden of demonstrating that this Court has the authority to hear the case. *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014). Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint or claim for a lack of subject matter jurisdiction. "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

### B.   **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint (or counterclaim) and "accept as true all of the factual allegations contained" therein. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff (or counterclaimant) and considers whether the complaint (or counterclaim) states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged." *Iqbal*, 556 U.S. at 678. As evaluating a complaint (or counterclaim) under Rule 12(b)(6) is "a context-specific task" the Court may "draw on its judicial experience and common sense." *Id.* at 679.

"The complaint [or counterclaim] must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014). In evaluating a motion to dismiss, "a court may take judicial notice of 'matters of public record' and other information that would constitute adjudicative facts under Federal Rule of Evidence 201." *Megaro v. McCollum*, 66 F.4th 151, 158 (4th Cir. 2023) (citing *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508–12 (4th Cir. 2015)).

## III.    DEFENDANT DAY'S MOTION TO DISMISS

The Court begins with Defendant Day's motion to dismiss the complaint. Defendant Day argues that the complaint should be dismissed as barred under Maryland's statute of limitations. *See* ECF 167, at 5–7. More specifically, Defendant Day argues that the "causes of action for · fraudulent conveyance and unjust enrichment accrued no later than September 13, 2018." *Id.* at 4. He asserts that because he was not a party to the Enforcement Action, the Receivership Orders tolling the statute of limitations "are not binding on him as a matter of law," *id.* at 5, and that he "did not have a reasonable opportunity to challenge" the Receivership Orders in the Enforcement Action, *id.* at 6. Defendant Day draws the Court's attention to the fact that "[b]efore the instant lawsuit was filed, Mr. Day had already been named as a defendant in two other lawsuits seeking the disgorgement of Mr. Day's purported 'net winnings' from Kevin Merrill's Ponzi scheme." *Id.*

6

at 6 (citing *Jeffrey J. Connaughton, et al. v. Gary W. Day, et al.*, Case No. 461362-V (Md. Cir. Ct. Montgomery Cnty.); *Robert A. Errera, et al. v. Gary W. Day, et al.*, Case No. 487158-V (Md. Cir. Ct. Montgomery Cnty.)). Defendant Day asserts that "had either the parties to those earlier suits— or the courts overseeing them—known that the Receiver would later file suit against Mr. Day over the exact same 'net winnings,' those suits would have been pursued and resolved much differently." *Id.* He characterizes the instant suit as the Receiver's attempt "to force Mr. Day to disgorge his alleged 'net winnings' a second time, after the statute of limitations has expired[, ]after Mr. Day had already been asked to do so in prior suits" subject to confidentiality provisions, and in violation of his due process rights. *Id.*

Defendant Day's arguments mirror those already brought by the other defendants seeking dismissal and rejected by this Court. For the same reasons explained in the September 26, 2024 memorandum opinion, "[t]he Court declines to find the complaint barred by the statute of limitations," *see* ECF 140, at 15, and therefore denies Defendant Day's motion to dismiss.[9] The two state cases Defendant Day cites do not change the Court's analysis. Defendant Day has not provided the Court with any of the filings in those cases, making their impact on this case unclear. And while the outcome of those cases may impact the Receiver's ultimate recovery from Defendant Day, the Court does not currently have enough information before it to determine their impact on the instant case. Thus, dismissal on this basis is not warranted, and Defendant Day's motion to dismiss is denied.

---

[9] Defendant Day "recognizes that the Court entered a written opinion on the statute of limitations issue on September 26, 2024[.]" ECF 167, at 2 n.1 (citing ECF 140). While Defendant Day "has endeavored to not duplicate the arguments already raised by the other defendants," *id.*, the Court determines that its prior analysis covers Defendant Day's statute of limitations arguments.

7

## IV.   THE RECEIVER'S MOTION TO DISMISS DOUBLE H AND MAY DEFENDANTS' COUNTERCLAIMS

### A.   The Parties' Arguments

Both the Double H Defendants and May Defendants bring indemnification counterclaims against the Receiver. *See* ECF 143, at 9–10 ¶¶ 8–15; ECF 152, at 9–10 ¶¶ 15–24. The Double H Defendants allege that Double H and DeVille Asset Management Ltd. ("DeVille"), a Receivership Party, entered into an agreement where "DeVille expressly agreed to indemnify, defend, and hold harmless Double H and its officers and directors (including Richard Hall, its president) from claims brought by third parties such as the Receiver." ECF 143, at 9 ¶ 5. The Double H Defendants assert that:

> The Agreement provides, "[DeVille] hereby agrees to indemnify, defend, and hold [Double H.], its officers, directors, agents and employees harmless from and against all liability claims, demands, claims, causes of action, loss, damages and cost and expenses (including, without limitation, attorney's fees and expenses), which [Double H.] or any of them, may at any time suffer, sustain, or have asserted against them, or any of them, by any third party based or alleged to be based upon any act or omission on the part of [DeVille] or any of its officers, agents, directors, or employees."

*Id.* ¶ 6. Per the Receiver's complaint, "[t]he Receiver also operated [DeVille], Riverwalk Credit Solutions, Inc., and Riverwalk Debt Solutions, Inc. until the entities' assets were sold. The Receiver's operation of these entities generated cash for the Receivership Estate until such time as the entities' assets were sold." ECF 1, at 6 ¶ 18. The Double H Defendants allege that "[a]s operator of DeVille, the Receiver must satisfy DeVille's obligation to indemnify, defend, and hold harmless both Defendants," ECF 143, at 10 ¶ 14, and that "[t]he Agreement therefore requires DeVille to indemnify, defend, and hold harmless both [Double H] Defendants" since Richard Hall is president of Double H, *id.* ¶¶ 11, 12.

The May Defendants similarly assert counterclaims based on indemnification clauses in agreements made with a Receivership Party or a purported agent thereof. *See* ECF 152, at 9–10

8

¶¶ 15–24. Specifically, they allege that "[o]n August 21, 2015 and September 16, 2015, Defendant May entered into certain Investor Agreements with Bethesda Capital Investors, LLC ('BCI'), which represented that it was operating in partnership with Global [Credit Recovery, LLC, a Receivership Party,] to purchase and sell consumer debt portfolios on behalf of Defendant May." ECF 152, at 7 ¶ 4. Defendant May's agreement with BCI included an indemnity clause whereby "BCI and Global agree to defend, indemnify, and hold harmless [Defendant May] from and against any and all possible liability, demands, claims, allegations, costs, losses, damages, judgments, and expenses." *Id.* ¶ 5. Defendant May alleges that "BCI was Global's partner and/or Global's agent and thus had the authority to bind Global. In the alternative, acts or manifestations by Global or its principal(s) reasonably led Defendant May to believe that BCI had the authority to act on Global's behalf." *Id.* at 8 ¶ 6. On December 2, 2015, Defendant May entered into a similar agreement with Acrebay Investment Management, LLC ("AIM"), which Defendant May alleges "represented that it was operating in partnership with Global to purchase and sell consumer debt portfolios on behalf of Defendant May." *Id.* ¶¶ 7–9.

"On February 14, 2017, January 16, 2018, March 5, 2018, March 22, 2018, July 24, 2018, Defendant Logic Growth entered into certain Investor Agreements with Defendant Gary W. Day ('Day'), who represented that he was operating in partnership with Global to purchase and sell consumer debt portfolios on behalf of Defendant Logic Growth."[10] *Id.* ¶ 10. Per the May Defendants, each of these agreements had indemnity clauses. *Id.* at 8–9 ¶¶ 11–12. As to Defendant May, the May Defendants assert that "[i]f Defendant May is found liable in this action, the Receiver, as operator of Global, must satisfy Global's obligations under the BCI-Defendant May Investor Agreements and AIM-Defendant May Investor Agreement to defend, indemnify, and hold

---

[10] The May Defendants do not bring any crossclaims against Defendant Day.

harmless Defendant May from any such liability or resulting costs, losses, damages, judgments, and expenses," *id.* at 9–10 ¶ 18, and the same is true if Defendant Logic Growth is found liable under the "Day-Defendant Logic Growth Investor Agreements," *id.* at 10 ¶ 23.

The Receiver argues that the Court lacks subject matter jurisdiction over the counterclaims as the *Barton* doctrine—as well as the litigation stay provisions of the Receivership Orders—precludes subject matter jurisdiction in an action against a court-appointed receiver unless the party suing the receiver has first obtained leave of the appointing court. *See* ECF 153-1, at 5–6 (citing, e.g., *Barton v. Barbour*, 104 U.S. 126, 128 (1881)); ECF 156-1, at 6–7 (same). The Receiver further argues that the Court should decline to extend supplemental jurisdiction to hear the counterclaims. *See* ECF 153-1, at 6; ECF 156-1, at 6–7. Alternatively, the Receiver argues that the Counterclaimants have failed to state a claim because the indemnification counterclaims are premature and untenable, the Receiver's claims are not within the scope of the indemnity clauses cited, and the Receiver is not responsible for DeVille's or Global's liabilities. *See* ECF 153-1, at 6–10; ECF 156-1, at 7–11.

The Counterclaimants each oppose the respective motions to dismiss, arguing that the *Barton* doctrine does not apply and that the Court can and should exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). ECF 155, at 3–7; ECF 160, at 5–9. They argue that the *Barton* doctrine does not apply because the Receiver operated DeVille and Global, because this Court is the same one that appointed the Receiver, and because the Receivership Orders do not otherwise divest this Court of jurisdiction over the counterclaims. ECF 155, at 5–6; ECF 160, at 7–9.

As to the Rule 12(b)(6) motion, the Counterclaimants argue that they have stated indemnification claims, that the counterclaims are not premature because the indemnity clauses

protect against liability and that they properly bring indemnity claims against the Receiver because they will suffer damages covered by the indemnity clauses if judgment is entered against them. ECF 155, at 7–9; ECF 160, at 9–13.

In reply, the Receiver argues that the counterclaims are not compulsory as they do not arise out of the same transaction or occurrence as the Receiver's claims, that the *Barton* doctrine does indeed apply, and that the Counterclaimants' proper remedy lies with filing a claim in the Enforcement Action. *See* ECF 159, at 10; ECF 165, at 3–5. The Receiver further argues that the counterclaims for indemnification are not tenable, as the Receiver only seeks to recover false profits the Counterclaimants obtained as a result of the criminal Ponzi scheme, to which he contends they are not legally entitled. ECF 159, at 9–10; ECF 165, at 5–6. Finally, the Receiver asserts that though he operates the entities in question as receiver, the Counterclaimants have not alleged that he is their agent, necessary to bind him to the indemnity provisions. ECF 159, at 10–11; ECF 165, at 6–7.

### B.    Analysis

Over a century ago in *Barton*, the Supreme Court announced "a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained." 104 U.S. at 127 (citing *Davis v. Gray*, 16 Wall. 203 (1872)). The Court reasoned:

> If [a plaintiff] has the right, in a distinct suit, to prosecute his demand to judgment without leave of the court appointing the receiver, he would have the right to enforce satisfaction of it. By virtue of his judgment he could, unless restrained by injunction, seize upon the property of the trust or attach its credits. If his judgment were recovered outside the territorial jurisdiction of the court by which the receiver was appointed, he could do this, and the court which appointed the receiver and was administering the trust assets would be impotent to restrain him. The effect upon the property of the trust, of any attempt to enforce satisfaction of his judgment, would be precisely the same as if his suit had been brought for the purpose of taking property from the possession of the receiver. A suit therefore, brought without leave to recover judgment against a receiver for a money demand, is virtually a suit the purpose of which is, and effect of which may be, to take the

11

property of the trust from his hands and apply it to the payment of the plaintiff's claim, *without regard to the rights of other creditors or the orders of the court which is administering the trust property.*

*Id.* at 127–29 (emphasis added). The *Barton* doctrine essentially prevents a party seeking to bring suit against the receiver from "jumping the line" over other creditors, affecting receivership res and interfering with a receiver's duties overseeing that res, without permission from the appointing court overseeing the receivership. *See Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2004) ("[O]ne purpose of the *Barton* doctrine is to prevent a party from obtaining some advantage over the other claimants upon the assets in the trustee's hands[.]" (internal quotation marks omitted)). The *Barton* doctrine is a question of a court's subject matter jurisdiction. *See McDaniel v. Blust*, 668 F.3d 153, 156 (4th Cir. 2012). "Part of the rationale underlying *Barton* is that the court appointing the receiver has in rem subject matter jurisdiction over the receivership property." *In re Crown Vantage, Inc.*, 421 F.3d 963, 971 (9th Cir. 2005) (citing *Barton*, 104 U.S. at 136). "[A]s a matter of comity, as well as custom, the *Barton* doctrine rests on this exclusivity of the [appointing court's] receivership over the assets before it as a matter of jurisdiction, and indeed [the Fourth Circuit] ha[s] confirmed as much." *Protopapas v. Travelers Cas. & Sur. Co.*, 94 F.4th 351, 358 (4th Cir. 2024) (citing *Conway v. Smith Dev., Inc.*, 64 F.4th 540, 545 (4th Cir. 2023)). "As the Supreme Court explained, allowing the unauthorized suit to proceed 'would have been a usurpation of the powers and duties which belonged exclusively to another court.'" *In re Crown Vantage, Inc.*, 421 F.3d at 971 (quoting *Barton*, 104 U.S. at 136).

Here, the Counterclaimants assert that this Court *is* the court from which a person intending to bring suit against the Receiver would seek leave, rendering *Barton* inapplicable. *See* ECF 160, at 8. The Court has found some support for this position. *See In re World Mktg. Chicago, LLC*, 584 B.R. 737, 744 (Bankr. N.D. Ill. 2018) ("The *Barton* doctrine does not apply to this matter as

the Kraft Parties are not seeking to sue the Trustee in another court."); *SEC v. Nutmeg Grp., LLC*, No. 09 C 1775, 2012 WL 3307406, at *2 (N.D. Ill. Aug. 13, 2012) ("[T]here is no precedent for equating 'another forum' with any other sitting judge in this district. 'This Court' refers not to the particular judge presiding over a case, but to the actual court—here, the U.S. District Court for the Northern District of Illinois."). Nevertheless, while it may be true that this Court (including the undersigned) possesses subject matter jurisdiction such that the *Barton* doctrine does not squarely apply, the litigation stay imposed by the Court in the Enforcement Action still precludes the counterclaims brought here, and *Barton*'s rationale still provides persuasive justification for the requirement that the Counterclaimants seek leave in the Enforcement Action.[11] *See McNamara v. Nat'l Merch. Ctr., Inc.*, No. CV2101122MWFKSX, 2022 WL 2286759, at *2–3 (C.D. Cal. May 11, 2022) (rejecting argument that "*any* claim could be brought against the entities in receivership so long as they were brought in this Court (rather than a 'non-appointing court') because this Court would retain exclusive jurisdiction" as incongruent with the litigation stay entered in that case and "the receivership process more broadly, which both seek to resolve claims against the receivership entities in an orderly and efficient manner").

The Receivership Orders entered in the Enforcement Action expressly note that "[t]his Court shall retain exclusive jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions alleged to have been committed in their representative capacities." Enforcement Action, ECF 11, at 21 ¶ 49; ECF 62, at 22 ¶ 50; ECF 484, at 23 ¶ 50; ECF 769, at 24 ¶ 51. The May Defendants argue that this provision does not preclude the

---

[11] In seeking leave from the appointing court, a party intending to assert a claim against a receiver must demonstrate a *prima facie* case against the receiver. *Anderson v. United States,* 520 F.2d 1027, 1029 (5th Cir. 1975). The Counterclaimants have not argued here that they have done so, so the Court will not resolve that question.

indemnification counterclaims because they "are based on Global's indemnification obligations—not on the Receivers' acts or omissions as Receiver. Under the Receivership Orders, the Receiver operates Global and is responsible for its indemnification obligations." ECF 160, at 8. But the Counterclaimants do not bring a claim against the entities with which they contracted. They necessarily bring the counterclaims against the Receiver in his capacity as the receiver. Such a claim is plainly covered under the litigation stay provision of the governing Receivership Order. *See* Enforcement Action, ECF 11, at 17–18 ¶¶ 34–35; ECF 62, at 18–19 ¶¶ 34–35; ECF 484, at 19–20 ¶¶ 34–35; ECF 769, at 20 ¶¶ 34–35 (enjoining "parties to any and all Ancillary Proceedings," including [a]ll civil legal proceedings of any nature, including . . . [an action involving] the Receiver, in his capacity as Receiver," "from commencing or continuing any such legal proceeding"); *see also, e.g.*, Enforcement Action, ECF 769, at 20 ¶ 34, at 21 ¶ 36 (Third Amended Receivership Order—the most recent order—imposing the stay of litigation "until further Order of this Court"). The undersigned therefore finds that the counterclaims are covered by the litigation stay and declines to exercise supplemental jurisdiction over them at this time. *Cf. Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006) ("The district court may require all such claims to be brought before the receivership court for disposition pursuant to summary process consistent with the equity purpose of the court." (citing *SEC, Mosburg v. Basic Energy & Affiliated Resources, Inc.*, 273 F.3d 657, 668 (6th Cir. 2001))); *SEC v. Peterson*, 129 F.4th 599, 615–16 (9th Cir. 2025) (taking into account the cost of defending potential equitable indemnification counterclaims on the receivership res in upholding litigation bar order); *Wagner v. Maddox*, No. CV 12-0115 WPL/ACT, 2012 WL 13080114, at *4 (D.N.M. June 11, 2012) (reasoning that the district court judge from whom leave to bring a claim against a bankruptcy trustee was sought was "not in the best position to assess how litigation could impact the

administration of [the bankruptcy] estate," that a non-appointing judge granting leave "might impede the bankruptcy court's work," and that leave granted by a non-appointing district judge "will not provide the bankruptcy court with the information it needs to assess the ongoing work of its appointed trustee"). Absent relief from the litigation stay imposed by the Receivership Orders in the Enforcement Action, which has been pending since 2018 and remains ongoing, the Counterclaimants cannot bring their indemnification counterclaims in this action.

To the extent the Counterclaimants assert that the indemnification counterclaims are compulsory under Fed. R. Civ. P. 13 and must be brought now, *see* ECF 155, at 3, they still fall within the litigation stay of the Enforcement Action and leave must be sought to bring them. *See Wagner*, 2012 WL 13080114, at \*4 (holding that counterclaims were barred by the *Barton* doctrine and noting that even if the appointing court refused to grant leave, the counterclaimant may still "rais[e] her claims at a later date" because supplemental jurisdiction is discretionary (*Barton* doctrine is mandatory), and a compulsory counterclaim "must still meet subject matter jurisdiction requirements"); *McNamara*, 2022 WL 2286759, at \*2 (staying counterclaims, which counterclaimants asserted were compulsory, brought against receiver as counterclaims were barred by litigation stay of preliminary injunction); *Huddleston for Coadum Advisers, Inc. v. Grafton Enters. Midway LLC*, No. 1:09-CV-2799-ODE, 2011 WL 13214128, at \*6 (N.D. Ga. Feb. 17, 2011) ("Because the reasons for prohibiting new lawsuits against a receiver apply equally to proscribing counterclaims against a receiver, the Court finds that the *Barton* doctrine and the TRO's prohibition apply in this case."); *cf. United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 449 (3d Cir. 2005) ("As we have already said, the very purpose of a receiver is to collect and disentangle a receivership estate's assets, including debts owed to it. In carrying out that purpose, the receiver simply does not consent to the bringing of a counterclaim by every debtor.").

15

As the Counterclaimants would have it, the Receiver would indemnify the Counterclaimants for the claims the Receiver himself brings to recover money the Counterclaimants received as a result of their participation—even if unwitting—in a criminal Ponzi scheme. *See* ECF 155, at 8; ECF 160, at 4. Under this theory, if the Court were to find in favor of the Receiver on the fraudulent transfer or unjust enrichment counts levied against the Counterclaimants, the Receiver would be on the hook to pay *to the Counterclaimants* the very alleged net winnings he seeks to recover from them. Moreover, the Counterclaimants seek indemnity for not just damages, but liability. *See* ECF 155, at 2; ECF 160, at 10. Notwithstanding any deficiencies in the merits of the counterclaims, the Counterclaimants' theory would subvert the very nature of an equity receivership and would essentially nullify all clawback proceedings where a contractual indemnity clause exists between a receivership party and a "net winner" defendant, even where that indemnity clause arose in connection with the very criminal Ponzi scheme at the center of the case. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 843 (5th Cir. 2019) (distinguishing *SEC v. Kaleta*, 530 F.App'x 360 (5th Cir. 2013), in which the "bar order protected the assets of the receivership estate" and properly "forestalling a race to judgment that would have diminished the recovery of all creditors against receivership assets" from the case before it where "the bar orders before us extend beyond receivership assets"); *McNamara*, 2022 WL 2286759, at *2–3 ("Were NMC to succeed on its counterclaims and seek to collect on the assets of entities under receivership, such a collection would either divest the Receiver of the authority granted by the Court to administer the assets of the receivership entities, leapfrogging NMC's claims ahead of all others, or require NMC's claims to be balanced along with the rest of the claims the Receiver seeks to resolve, leading to no material change of position despite significant litigation expenditure.").

16

"The goal of a receivership is 'the fair distribution of the liquidated assets.'" *CCWB Asset Invs., LLC*, 112 F.4th at 178 (quoting *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 334 (7th Cir. 2010)). Equitable distribution aims to "grant relief to as many investors as possible, *id.* (quoting *SEC v. Torchia*, 922 F.3d 1307, 1311 (11th Cir. 2019)) (alteration omitted), and prevent certain investors from "jumping to the head of the line and recouping 100 percent of [their] investment by claiming creditor status while similarly situated [ ] investors receive substantially less," *Wealth Mgmt. LLC*, 628 F.3d at 334. These same principles of equity form the basis of the *Barton* doctrine and counsel against permitting the counterclaims to proceed here. "Piecemeal litigation by individuals and entities does not serve the goal of the receivership, and instead would only congest the Court's docket with claimants competing for the first shot at any assets." *See McNamara*, 2022 WL 2286759, at *3. Accordingly, the counterclaims are dismissed without prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendant Day's motion to dismiss is DENIED and Receiver's motions to dismiss the counterclaims are GRANTED. The Receiver is directed to file a status report within twenty-one (21) days regarding (1) the status of service on the defendants, (2) whether he intends to pursue entry of default against any defendant (or why not), and (3) whether he believes the Court should enter a scheduling order at this time.[12] A separate implementing Order will issue.

Dated: August 13, 2025                                   /s/
                                                    Brendan A. Hurson
                                                    United States District Judge

---

[12] The Receiver is directed to provide Defendants' positions on the propriety of the issuance of a scheduling order to the extent possible. If any Defendant disagrees with the Receiver's position on the issuance of a scheduling order, they shall have seven (7) days after the Receiver files the status report to file any objection.